ELIZA WHITWELL & another *vs.* THEODORE S. HARRIS & another.

The front part of a lot of land situated on the corner of W. and T. Streets, and running back to a passageway opening from W. Street, was covered by a brick building fronting on T. Street; and the rear was a yard about thirty feet deep from W. Street, and fifteen feet wide, bounded on W. Street by a wooden fence, on the passageway by a brick wall, on the side parallel with W. Street by a partition wall, and on the remaining side by the rear wall of the building. In the part of the yard adjoining the partition wall was a shed, which that wall formed the back of. The owners leased these premises for a term of years, by a lease on condition that the lessees should keep the premises in good repair, and not " make any alteration or addition in and to the buildings on the said premises, or to the premises themselves, without the consent of the lessors." The fence of the yard on W. Street was so decayed that it became necessary to remove all of it but the posts. The lessees, with the implied consent of the lessors, removed it. And then, without the consent of the lessors, the lessees put upon the yard a wooden structure, not more than twelve feet high, with a door and two windows in the front of it on W. Street, where the fence had been; its rear formed of the shed; its sides resting, one against the wall of the passageway, the other against the rear wall of the brick building; its roof resting on the first named wall, and running across to the second, to which the tar and gravel covering of the roof adhered; no part of it fastened otherwise to the buildings or walls; and ca-

pable of being removed either entire or in pieces, without injuring the buildings or walls, or disturbing the soil. This structure was heated through a flue from a furnace in the cellar of the brick building, and was used for a shop and work-room. *Held*, that its erection was a breach of the condition of the lease, whether or not it was removable by the lessees as a trade-fixture.

ACTION on the Gen. Sts. *c.* 137, for possession of a parcel of real estate situated on a corner of Tremont and Winter Streets in Boston. Writ dated December 22, 1869. The case was submitted to the judgment of the court on a statement in which the material facts were agreed as follows :

The plaintiffs are owners of the premises ; and the defendants are their tenants under a lease thereof dated January 1, 1867, for ten years from that date. This lease described " the estate and premises " which it demised, as " the estate on the southerly corner of Winter and Tremont Streets in said Boston, and numbered 130 on said Tremont Street ; " the lessees covenanted to keep the premises in good repair, and " that neither they, nor others having their estate in the premises, shall or will make any alteration or addition in and to the buildings on the said premises, or to the premises themselves, without the consent of the lessors being first obtained in writing allowing thereof ; " and the instrument was expressed to be on condition that, if the lessees should fail to perform any or either of their covenants, the lessors might reënter and repossess the premises as of their former estate.

The defendants had occupied the premises ever since 1860, at which time the only structure on the land was a dwelling-house and its outbuildings. The defendants altered the dwelling-house to a shop, and erected in the rear of it, upon Winter Street, a brick addition, three stories high ; after which erection there was left, in the rear of the structure, a yard or lot, bounded northerly fifteen feet and a half on Winter Street, easterly thirty feet and seven inches on a passageway running out of Winter Street, southerly fifteen feet and a half on the partition wall against an adjoining proprietor, and westerly twenty-nine feet and five inches upon the brick addition, to the point of beginning on Winter Street. The lease of January 1, 1867, was then given.

" At the time when this lease was given, that portion of the premises " above described by boundaries " was inclosed by a board fence on Winter Street, the base-board of which and ground of the yard were about ten inches above the level of the side-walk; by a brick wall, not exceeding twelve feet high, on the passageway; by the partition wall between these premises and the adjoining estate; and by the wall of the new brick building erected by the defendants. On the rear of this lot thus inclosed there was a shed or outhouse, the back of which was formed by the above named partition wall. The shed was separated from the rest of the yard by a wooden front wall, in which was a movable blind towards the passageway and a door towards the brick building. The blind had been removed and stowed away on the leased premises before the present lease was made."

" The fence on Winter Street having decayed and become dilapidated, and its post foundations and base-board having been thrown out so as to encroach several inches on the sidewalk, it became necessary to remove all but the posts. The defendants notified the plaintiffs of these facts; and one of the plaintiffs examined the fence, with one of the defendants, and said, in substance, that the fence was in a bad condition and ought to be repaired, or removed and replaced by another. The plaintiffs proposed that the defendants should remove it, and build a brick wall in its place, the plaintiffs paying one half of the expense; but the defendants declined this proposal, and subsequently notified the plaintiffs that they should remove the fence. Not receiving any reply, nor hearing from the plaintiffs, the defendants, after several weeks' delay, proceeded to remove the fence, without in any way disturbing the soil except so far as was necessary to straighten and adjust the post foundations so that they should not project upon the sidewalk.

" The defendants then placed on this lot a wooden structure, so made and arranged as to nearly fill the space; its sides resting against the wall of the new building above mentioned, and the wall on the passageway; the front being of glass and wood, forming a door and two windows; the rear being formed of the above mentioned shed or outhouse, and the roof resting on the brick

wall on the passageway. The roof of the above named shed or outhouse, and uprights, were so arranged as to be in no way fastened or attached to the building or walls, except that the tar and gravel, which covers the paper on the roof, is spread over the junction between the roof and the wall of the brick building, so as to fill it up and adhere to the brick wall. This structure rests on the surface of the soil, and is not fastened or attached by nails, screws, or in any other way, except as aforesaid, to the buildings or walls; and could be taken out whole or in pieces, without disturbing the soil or in any way injuring or marring the buildings or walls. It does not exceed twelve feet in height; and its position on the premises does not increase the fire risk, or the rate of insurance. It is occupied as a shop, with a work-room in the rear, and is heated by a furnace which is in the cellar of the new brick building, a hot air flue passing from the furnace into said shop, through the opening of a trap-door which always led from the cellar of the brick building into the part formerly used as a shed. This shed, before the existence of the lease of January 1, 1867, and since, before the alleged breach of condition, had been used at times as a work-room and store-room. The door in the front wall of the shed was taken off its hinges at the time of the alleged alterations, the butts still being in their proper places; and was taken away and stowed in the leased premises; and the rest of the wall remains, forming a division between the workshop and the front shop."

"The plaintiffs, claiming this action of the defendants to be a breach of the covenants and conditions of the lease, relating to alterations and additions, made a formal entry and demand of the premises, and then brought this suit."

*C. A. Welch,* for the plaintiffs.

*H. W. Paine & R. D. Smith,* for the defendants. The question is, whether upon the facts stated the lessees have made "any alteration or addition in and to the buildings on the said premises, or to the premises themselves."

It is not clear what the parties intended by the buildings as distinguished from the premises, as in the same sentence they have manifestly used the word "premises" as embracing both land and buildings. But it may be safely assumed that they did

not use the word "alteration" as meaning every disturbance of the existing order of things; nor the word "addition" as meaning every deposit on the land or in the building; for such a construction would render the lease valueless to the tenants. That cannot be alteration of a thing, which is entirely outside of and unconnected with it; nor can that be an addition, which is no part of it, and is placed upon it only for a temporary purpose, and is capable at any moment of being removed from it, like a wheelbarrow on the vacant land, or a counter in the shop.

The facts show that the defendants have done no more than drop upon the land a covered wooden box, in no way attached to the soil or the building, and capable of being removed without more injury to the leased premises than would be occasioned by the removal of a barrel of flour or an ordinary packing-case.

This wooden structure is in its nature a trade fixture, which, in the absence of special provisions, the lessees can remove at pleasure.

The fence on Winter Street was dilapidated; and both parties agreed that it should be removed. Its removal was not an alteration or addition, within the meaning of the lease. *Boston* v. *Worthington*, 10 Gray, 496, 500. The case finds that it was necessary to remove so much of it as was removed.

AMES, J. The lease, which the defendants have accepted, is liable to forfeiture if they neglect or fail to perform any or either of their covenants; and one of these covenants is, that they will make "no alteration or addition in and to the buildings on the premises, or to the premises themselves, without the consent of the lessors being first obtained in writing allowing thereof." The wooden structure, standing upon the back part of the lot of land included in the lease, was placed there by the defendants without such consent; and the only question is, whether in so doing they have violated their covenant.

In deciding this question, we think it unimportant whether the structure should or should not be considered as one of those trade fixtures, which, in the absence of any stipulation to the contrary, the tenant might lawfully remove before the expiration of his term. The fact that it could be removed without leaving any

permanent traces that it had ever been on the premises does not touch the question. The same thing might perhaps be said of it if it had been built of more permanent materials. It was a building ; and not, as the defendants' counsel have described it, a mere covered box. If it had been placed there by the owner of the fee, it would have been, in its general character and use, and in the mode of its annexation to the estate, a part of the freehold and realty. It is difficult to see what could be an alteration or addi‧ tion " to the premises themselves," if a new building, of such a description and used in such a manner, was not. Such a building, erected by the tenants without the permission of the lessors, must, under this lease, be considered as an unauthorized addition to and alteration of the premises, and a departure by the lessees from the terms of their lease.

If the condition should appear to be harsh and oppressive, the proper time for them to have made that objection was before they executed and accepted the lease. We cannot, on that ground, alter the terms of a contract that was fairly and deliberately made, or give it any other construction than such as the natural and obvious meaning of its terms requires.

*Judgment for the plaintiffs.*