### E. S. JAFFRAY & CO. v. WOLF & SON.

#### (*Opinion filed July 20, 1893.*)

1. DEMURRER TO EVIDENCE— *What it admits*—A demurrer to evidence not only admits the facts, as proven, to be true, but also admits all facts which the evidence fairly tends to establish.

2. NEBRASKA STATUTES—*Attachment under*—Under the Nebraska Statutes, § 237, Code of Civil Procedure, a creditor can only maintain an attachment on a debt not due for one of the following causes: *First,* Where a debtor has sold, conveyed, or otherwise disposed of his property, with the fraudulent intent to cheat or defraud his creditors, or to hinder or delay them in the collection of their debts; *Second,* When he is about to make such sale, conveyance, or disposition of his property with such fraudulent intent; *Third,* Where he is about to remove his property, or a material part thereof, with the intent, or to the effect of cheating, or defrauding his creditors, or of hindering and delaying them in the collection of their debts. The fact that a debtor fraudulently contracted the debt sued for, is not sufficient ground for an attachment before the maturity of such debt.

3. ATTACHMENT—*Statutory remedy*—The right to an attachment is statutory, and, in order to maintain it, the defendant must be brought within the terms of the statute.

4. INSOLVENT—*Preference of creditor*—An insolvent debtor may use, convey, or mortgage all, or substantially all of his property, if done in good faith, to pay or secure a part of his creditors, to the exclusion of his other creditors. Persons in failing circumstances, while they still have complete dominion of their property, may use it as they see fit in liquidating *bona fide* debts.

*Appeal from the District Court of Logan County, Hon. E. B. Green, Judge. Affirmed.*

*Bierer & Cotteral*, and *G. S. Cunningham*, and *Joseph Wisby*, for Appellants.

*Harper S. Cunningham*, for Appellees.

The opinion of the court was delivered by

DALE, J.:—This case comes here on appeal from the district court of Logan county.

The action was brought in the court below, Dec. 17, 1890, to recover the sum of $5,250. At the same time, the plaintiffs below filed their affidavit for attachment, alleging as grounds therefor that the defendants had sold, conveyed, and otherwise disposed of their property, with the fraudulent intent to cheat or defraud their creditors, or to hinder or delay them in the collection of their debts. Also, that the defendants fraudulently contracted the debt and incurred the obligation for which this suit is brought.

At the time the action was commenced the debt sued upon was not due, the claim maturing May 1, 1891, and the suit was instituted and attachment levied under the laws of the state of Nebraska, then in force in this Territory.

The errors assigned by appellant are as follows:

*First.* Error of the court in sustaining the defendant's motion to set aside the judgment of the court, rendered April 2, 1891.

*Second.* Error of the court in sustaining the defendant's demurrer to the evidence introduced in said cause.

*Third.* Error of the court in overruling the plaintiff's application to amend the complaint and attachment affidavit.

An examination of the transcript filed in this case discloses the following facts: Prior to June, 1889, W.

F. Wolfe & Son had been for a number of years engaged in carrying on a large dry goods business at Topeka, Kansas. In June, 1889, such firm removed a portion of their goods from that place to Oklahoma City, in this Territory, and opened up a general merchandising business in that city. They also continued their business in Topeka until in June, 1890, when they transferred such business to Guthrie, also in Oklahoma. The business, at both Oklahoma City and Guthrie, was prosecuted from the time it was started until the bringing of this action.

When Wolfe & Son, in June, 1890, closed out their business in Topeka, Kansas, such firm was indebted to Tootle, Hosea & Co., Henry W. King & Co., The Central National Bank of Topeka, and the Bank of Topeka, in the sum of about $20,000. This indebtedness was represented by notes, some of which are not yet due. A. H. Vance was security on all of the notes, and D. A. Harvey and J. T. Clark were sureties for a part of such obligations. Wolfe & Son had, prior to the time they removed from Topeka, Kansas, borrowed $1,900 from a sister of Vance, which sum, with accumulated interest, had been paid by Vance to his sister, Vance taking three notes from Wolfe & Son as evidence of such indebtedness, which notes were long past due at the commencement of this action.

That these debts to the several parties, as set forth above, were *bona fide*, does not admit of a doubt. But it should be stated that the debt to Vance in the sum of $1,900, and accumulated interest, had been, prior to the bringing of this action, partially, if not wholly, secured by a deed to the wife of Vance of property in Topeka, Kansas.

Dec. 15, 1890, Wolfe & Son executed a chattel mortgage upon the stocks of goods held at Guthrie and Oklahoma City, in favor of A. H. Vance, D. A. Harvey,

J. T. Clark, the Bank of Topeka, Topeka, Kansas; the Central National Bank, Topeka, Kansas; Henry W. King & Co., Chicago, Ill., and Tootle, Hosea & Co., St. Joseph, Mo. The chattel mortgage read as follows:

## CHATTEL MORTGAGE.

"Know all men by these presents that we, W. F. Wolfe & Son, parties of the first part, are indebted to A. H. Vance, D. A. Harvey and J. T. Clark, the bank of Topeka, Kan.; the Central National Bank, Topeka, Kan.; Henry W. King & Co., Chicago, Ill.; Tootle, Hosea & Co., St. Joseph, Mo., parties of the second part, in the sum of twenty-two thousand, forty-eight and 54-100 dollars, with interest on said sum as follows: Twenty-one hundred dollars on note Bank of Topeka, Topeka Kan., Jan. 28, 1891, with interest at 10 per cent after maturity; two thousand dollars on note due Bank of Topeka, Topeka, Kan., Nov. 22, 1890, with 10 per cent interest from said date; one thousand dollars on note due Bank of Topeka, Topeka, Kan., December 15, 1890, with 10 per cent interest from said date, five thousand dollars on note due Bank of Topeka, Topeka, Kan.; Feb. 20, 1891, with 10 per cent interest after maturity; one thousand dollars on note due Central National Bank, of Topeka, Kan., Jan. 14, 1891, with 10 per cent interest after maturity; One thousand dollars on note due Central National bank of Topeka, Kan., Dec. 5, 1890, with interest at 10 per cent from said date; one thousand dollars on note due A. H. Vance, of Topeka, Kan; Six hundred dollars on note due A. H. Vance, of Topeka, Kan.; three hundred dollars on note due A. H. Vance, of Topeka, Kan., which with interest amounts at the present time to twenty-three hundred dollars; one thousand and forty-eight dollars and fifty-four cents, being the amount due Henry W. King & Co. of Chicago, Ill., as shown by two notes with interest on said amount from April 11, 1890, at 8 per cent; one thousand dollars, balance on note due Nov. 3, 1890, to Tootle, Hosea & Co. of St. Joseph, Mo., with interest at 9 per cent from April 9, 1890; twenty-eight hundred dollars due Dec. 3,

1890, to Tootle, Hosea & Co. of St. Joseph, Mo., with interest at 9 per cent, from April 9, 1890; twenty-eight hundred dollars due January 3, 1891, to Tootle, Hosea & Co., St. Joseph, Mo., with interest at 9 per cent from April 9, 1890.

"All of the above being promisory notes made by W. F. Wolfe, and Louis H. Wolfe, being the firm of W. F. Wolfe & Son., of the city of Topeka, State of Kansas, to the Bank of Topeka.

"The Central National Bank of the city of Topeka, State of Kansas; Henry W. King & Co., of Chicago, State of Illinois, and Tootle, Hosea & Co., of St. Joseph, state of Missouri, all of which said notes except those made to him, are signed by the said A. H. Vance as surety, all of which said notes except those made to A. H. Vance and Henry W. King & Co., are signed by D. A. Harvey as surety, and the note of five thousand dollars to the Bank of Topeka is signed by J. T. Clark as surety, and this mortgage is made for the benefit of said bank and persons above named to cover said note and all and any renewals of the same and to secure the payment of said money and protect said sureties from loss thereby. Now, therefore, in consideration of said indebtedness and to secure the payment of the same, as aforesaid, the said parties of the first part do hereby sell, assign, transfer and set over to said parties of the second part the property owned entirely by them and without any incumbrance described in the following schedule, viz: The entire stock of dry goods, clothing, hats, caps, boots and shoes, notions and gents furnishing goods, of said first parties now contained in the store building occupied by them and situated on the southwest corner of Harrison avenue and Division street in the city of Guthrie, Oklahoma Territory, and also the entire stock of dry goods, clothing, hats, caps, boots and shoes, notions, and gents furnishing goods of said first parties now contained in the store building occupied by them and situated and described as follows:

"Number 220 and 222 Main street, Oklahoma City, Oklahoma Territory, it being the true intent and meaning of the parties hereto to include and cover

herein all goods and wares and merchandise of which-soever kind and nature now contained in each of said store building, also all fixtures and furniture in each of said buildings. Provided, however, that if said debt and interest be paid as above specified, this sale and transfer shall be void, otherwise to be in full force and effect. The possession of the said above described property is hereby surrendered to the said' parties of the second part, and the said parties of the second part shall sell the same at public or private sale with or without notice, and after satisfying the aforesaid debt and interest thereon and all necessary and reasonable costs and expenses incurred out of the proceeds of the sale, they shall return the surplus to the parties of the first part, or to their legal representatives. And if from any. cause, said property shall fail to satisfy said debt and interest aforesaid, the said parties of the first part hereby agree to pay the deficiency.

"In witness whereof, the said party of the first part hereunto set tl e r hand this 15th day of December, 1890.

Witness' signature,    } W. F. WOLFE & SON.
  HARPER S. CUNNINGHAM. {

"This instrument executed in duplicate."

The instrument as above set forth was filed for record Dec. 15, 1890.

At the time Wolfe & Son executed the mortgage they were indebted to Jaffray & Co., and others, to the extent of about $14,000. Their total indebtedness being about $36,000. Their assets were worth, at a fair valuation, $18,000 or $20,000, and substantially all of such assets were included in the chattel mortgage given to Vance and others. When the mortgage was given Wolfe & Son were insolvent, and that fact was known to Vance, who was acting for himself and the other creditors named in the mortgage. As soon as the mortgage was executed Vance immediately took possession of the stocks of goods described in the mortgage. Wolfe & Son ceased doing business and have at no time since exercised, or attempted to exer-

cise, control or dominion over the same. Wolfe & Son had by fraudulent and false representations obtained credit from Jaffray & Co., and others, to the extent of about $14,000, which claims were not included in the list of those enumerated in the chattel mortgage to Vance *et al.*

The court below decided against the appellants upon the attachment proceedings, and we are asked to reverse such decision upon the grounds heretofore set out.

The first error alleged may be briefly disposed of. The action was commenced on Dec. 17, 1890, in both the main and attachment proceedings. On January 15, 1891, the defendants filed a general denial to both the claim and attachment. The general denials were sepa·rate, and evidently intended by the parties filing the same, to separate the issues. Acting upon this theory, the defendants offered to confess judgment for the amount sued for. The court rendered judgment not only for the amount sued for, but also sustained the attachment proceedings. The attention of the court having been called to the matter, the judgment, in so far as it related to the attachment proceedings, was set aside. Thereupon the plaintiffs below moved to vacate the entire judgment. It seems clear that the action of the court was one within his discretion. No court ought to permit a judgment by confession to stand, if such judgment be not fairly within the intention of the party offering to confess. And the court may in the furtherance of justice, act with great freedom in matters of the kind under consideration. We cannot say that the court abused his discretion. And therefore, the first ground assigned as error must be held not well taken.

The second ground of error is one which has demanded careful consideration. The demurrer to the

evidence having been offered, the court sustained the same. By standing on the demurrer, the party interposing the same not only admits the facts, as proven, to be true, but also admits as true all facts which the evidence fairly tends to establish. If therefore, the plaintiffs below introduced any evidence which fairly raised a presumption in favor of plaintiff, it was error on the part of the court to sustain the demurrer.

The affidavit filed in this case alleges as grounds for attachment, "that defendants have sold, conveyed and otherwise disposed of their property, with the fraudulent intent to cheat or defraud their creditors, or to hinder or delay them in the collection of their debts." Also "that defendants fraudulently contracted the debt and incurred the obligation for which this suit is brought." At the time this action was instituted the laws of Nebraska were in force in Oklahoma, and this action is governed by the provisions of the statute of that state. The debt sued for was not due, and a reference to § 237, Code of Civil Procedure, Compiled Laws of Nebraska, is necessary to properly determine how an attachment may be had upon a claim not due. The section cited reads as follows:

"A creditor may bring an action on a claim before it is due, and have an attachment against the property of the debtor, in the following cases: *First*, where a debtor has sold, conveyed, or otherwise disposed of his property, with the fraudulent intent to cheat or defraud his creditors, or to hinder or delay them in the collection of their debts. *Second*, where he is about to make such sale, conveyance or disposition of his property with such fraudulent intent. *Third*, where he is about to remove his property, or a material part thereof, with the intent, or to the effect, of cheating or defrauding his creditors, or of hindering or delaying them in the collection of their debts."

If an attachment will properly lie in this case it must rest upon the allegation set forth in the affidavit, which reads as follows:

"That defendants have sold, conveyed and otherwise-
disposed of their property, with the fraudulent intent
to cheat or defraud their creditors, or to hinder or de-
lay them in the collection of their debts."

The other allegation is grounds for attachment in
cases only where the debt is due.    And all the evidence
introduced in this case which tends to prove, and with-
out doubt does prove, that the defendants fraudulently
contracted the debt, and incurred the obligation for
which the suit was brought, should have been excluded
as irrelevant to the issue joined.    The right to an
attachment is statutory, and in order to maintain the
action, a defendant must be brought within the terms.
of the statute.

As we view this case, the sole question involved is,
can a person in failing circumstances, use all, or sub
stantially all, of his property to secure a part of his
creditors, and thereby exclude the other creditors from
participating in the benefits of an insolvent debtor's.
assets ?    If no such right exists, it must be because the
statute has prohibited it.    Otherwise, it will be con-
ceded that persons even in failing circumstances, while
they still have complete possession of their property,
may use it as they see fit, in liquidating *bona fide* debts.
(*Crawford v. Kirksey*, 28 Am    Rep. 704; *Cox v.
Fralry*, 26 Ark. 20, and cases there cited; *Dana v.
Stanford s*, 10 Cal. 277; *Morris v. Tillson*, 81 Ill. 607;
*Tootle v. Coldwell*, 30 Kan. 125; *Crawford v. Taylor*,
26 Am. Dec. 579, and notes following such decision.)

The instrument by which  Wolfe & Son conveyed to
Vance and others their property, for the payment of the
several debts mentioned therein, was in all respects a
chattel mortgage, except that it in effect nullified the
defeasance clause, as to  its usual office, when used in a
mortgage, by providing that the parties in whose favor
the instrument ran, should at once go into possession

of the property and sell and dispose of the same, and apply the proceeds to the payment of the debts named, accounting to Wolfe & Son for any surplus which might remain after the debts and expenses of selling were fully satisfied.

Appellants contend that the instrument in question must be held to be an assignment for the benefit of creditors. And that all creditors, whether mentioned in the instrument or not, have an equal right to participate in the distribution of the assets sought to be used for the payment of the claims of the persons named in said instrument.

In support of this claim the attorneys for appellant have prepared an able brief and presented at great length the reasons and line of authorities which they contend support their view.

It is insisted that a chattel mortgage given under the facts as shown in this case, is void by reason of §§ 1 and 29 of Chap. 6 of the Statutes of Nebraska. The sections referred to read as follows :

"SEC. 1, That no voluntary assignment for the benefit of creditors hereafter made shall be valid, unless the same shall be made in conformity to the terms of this act.

"Sec. 29, Every such assignment shall be void against the creditors of the assignor : *First* , If it give a preference of one debt, or class of debts, over another, except a preference to any person of not more than $100.00, for labor or wages. *Second*, If it require any creditor to release or compromise his demand. *Third*, If it reserve any interest in the assigned property, or any part thereof, to the assignor or assignors, or for his or their benefit, before his or their existing debts have been paid. *Fourth*, If it confer any powers upon the assignee, other or different from those contained in this act. *Fifth*, If the assignor or assignors shall fail to make the inventory required to be made by him or them, by this act, within the time required by this act, the assignment shall not be void, but the court may by

attachment, or other proper remedy, compel the making and return thereof by the assignor.    But an omission of any property, or of the name or claim of any creditor thereof, shall not avoid the assignment. "

Do these sections change the common law?    Was it the intention of the legislature, when they passed the act referred to, to effect the change?    If Wolfe & Son at the time they executed the mortgage, had seen fit to have sold, or otherwise disposed of, all their property to an entire stranger, for an adequate consideration, such stranger would have obtained a good title against any creditor of Wolfe & Son.    The recourse of the creditors must have been whatever they could have obtained from Wolfe & Son.    They could not have pursued the goods purchased by the stranger.    This proposition will not admit of a doubt.    If a stranger could buy and obtain a good title, does it not follow that a creditor may likewise purchase, if such creditor pays therefor an adequate consideration, either in cash or in the cancellation of a *bona fide* claim?    It appears to us that there is no essential difference in the two propositions.    No fraud could attach to the purchaser in either case.    If Wolfe & Son could convey good title to a purchaser, for cash, or a *bona fide* creditor, in satisfaction of a claim, does it not follow that he may mortgage either to a stranger or a creditor?    This proposition must be answered in the affirmative.    Because, if they could convey all the title, they must have had the power to convey a lesser interest.

It is contended that because Wolf & Son surrendered the immediate possession of the mortgaged property to the mortgagees, that the instrument ceased to be a chattel mortgage, and thereby became under the laws of Nebraska, a deed of assignment.    Numerous cases are cited in support of this theory, some of which we will consider.    *Bonus v. Carter*, 20 Neb. 566, relied upon by appellants, is based upon the following

facts.   A merchant by the name of Hamilton, in fail-
ing circumstances, executed what purported to be a
chattel mortgage in favor of Bonus, as trustee for a
number of creditors.   By the terms of the instrument,
Hamilton turned over a stock of goods, all of his prop-
erty, to Bonus, and authorized Bonus to at once take
possession and sell the property, and apply the
proceeds in payment of certain claims, in *pro rata* pro-
portion, as the same became due.   And if any excess
remained after the payment of all of such debts, to re-
fund such excess to Hamilton.   It appeared that Bonus
was not a creditor for the full amount of the claims
sought to be secured in the mortgage, but was in fact
acting as trustee for creditors other than himself.
While in the case under consideration, the creditors
named in the mortgage were taking security wholly
for their own benefit.   In discussing the case above
cited, the court says:

"It may be said, that in all cases where a mortgagee
takes possession of property by virtue of a chattel
mortgage, before or for the purpose of foreclosure, he
occupies a relation of trust, but this relation applies
only to the overplus, or what may remain of the mort-
gaged chattels after the payment of the mortgagee's
debt and proper costs.   But the instrument which we
are now considering creates a trust, immediately upon
its acceptance by the mortgagee, who is therein named
as the trustee.   This I think is the turning point, more
or less sharply defined, in all cases where instruments,
claimed to be mortgages, have been held to be assign-
ments for the benefit of creditors."

And in concluding its opinion, the court sets forth
very clearly the principle it had in mind, in the fol-
lowing language:

"I come to the conclusion, then, that while a debtor
may give a mortgage on a part, possibly, of all of his
property, to secure his *bona fide* debt, yet if by the
terms of such mortgage, or of a contemporaneous

agreement, he seek to create a trust in favor of **any** other creditor, or person, in relation to the mortgaged property, such instrument must be held to be an assignment for the benefit of all of such debtor's creditors, and as such, must be held void, if not made in conformity to the terms of the act relating to voluntary assignments."

It will be seen that the court expressly recognized the right of a creditor to secure himself, and only held the instrument to be an assignment because the mortgagee sought or accepted security for claims in which he had no interest. This case was afterward before the same court for review, and an opinion dissenting from the one quoted from was filed by Judge Reese. He holding to the view that their former decision could not be sustained, either upon principle or authority. That the Statutes of Nebraska did not change the common law rule which permits a creditor to mortgage his property in any manner he may choose in payment of his *bona fide* debts. (22 Neb. 495.)

In *Appollos v. Brady*, 49 Fed. Rep. 401, the case turns upon the same proposition discussed in *Bonus v. Carter*. In *Martin v. Hausman*, 14 Fed. Rep. 160; *Kellogg v. Richardson*, 19 Fed. Rep. 71; *Kerbs v. Ewing*, 22 Fed. Rep. 693, and *Clapp v. Dittman*, will be found cases very similar to the one we are considering. Those cases fairly support the position of appellants. However, Judge Brewer, in *Clapp v. Dittman, supra*, gives as a reason for holding to the rule appellants contend for, the fact that such rule appears to be in harmony with the previous decisions in the same circuit. He states, that if the question were a new one in such circuit his own conclusions would be different. And he cites approvingly numerous cases where the contrary rule prevails. It should also be borne in mind that the state courts of Missouri have uniformly held to a different view than that stated in the Federal courts for that state. (*Crow v. Beardsley*, 68 Mo. 435.)

And, also, that the Supreme Court of the United States, in *Chicago Union Bank v. Kansas City Bank*, 136 U. S. 223, expressly disproved the doctrine laid down in *Martin v. Hausman.*

*Straw v. Jenks*, 43 N. W. 941; *Marshall v. Livingston Nat. Bank*, 28 Pa. Rep. 312, and cases cited in those decisions, support the views of appellants. But the principal case relied upon for a reversal of the decision of the lower court, is *White v. Cathausen*, 129 U. S. 329.

A careful examination of that case does not, we think, justify the conclusions of the attorneys for appellant. The decision was based upon facts which are different from those under consideration. White conveyed to other parties all his property by chattel mortgage, as found by the court, without adequate consideration, and with intent to hinder, delay and defraud the attaching creditor. In this case, no question arises upon the sufficiency of the consideration. And in *May v. Tenney*, 148 U. S. 60, the court in referring to *White v. Cathausen, supra*, says that such decision turned upon the construction given to the statute of Illinois by the supreme court of such state.

After a careful review of all the authorities at our disposal, while we find that some of the courts have so construed the assignment laws of the several states, as being against the proposition that a creditor may in good faith transfer all his property for the payment of a part of his indebtedness; yet we are of the opinion that such construction is strained, and not in harmony with the intention of the law-makers who enacted the statutes. In support of our view we cite *Dana v, Stanfords*, 10 Cal. 269; *Morse v. Powers*, 17 N. H. 286; *Kohn v. Clement, Morton & Co.*, 12 N. W. Rep. 550; *Caldwell's Bank v. Crittenden*, 23 N. W. Rep. 646; *Gage*

*v. Perry,* 29 N. W. Rep. 824; *Waterman v. Silberberg,* 2 S. W. Rep. 578; *Tootle v. Caldwell,* 30 Kan. 125; *Scott v. McDaniel,* 3 S. W. Rep. 291; *Bonus v. Carter, supra.* Also the cases from the Missouri supreme court, *supra.*

If the legislatures of the several states, which have enacted assignment laws, had intended to prevent a person in failing circumstances from using his property in the payment of such of his *bona fide* debts as he might desire, they could easily have found language to express such intention. The very fact that the statutes are not clearly susceptible of such construction is a good reason for not so interpreting them.

The instrument by which Wolfe & Son conveyed, was intended as security for a debt. It was drawn in accordance with, and executed under the form of a chattel mortgage. Because such an instrument resembles in some of its features an assignment, does not give it an effect different from that intended, and which can be clearly comprehended from an examination of the instrument itself. Burrill on Assignments, §. 6, p 12, says: "That a mortgage resembles an assignment very closely in its leading features. Because this is true, courts frequently, where a debtor seeks to secure a part only of his creditors, construe an instrument clearly intended as a mortgage, to be an assignment."

The excuse given, is that such construction more equitably distributes the estate of a debtor. But to our mind, the better plan would be to call upon the law-making power to enact proper legislation upon the subject.

We hold, therefore, that the chattel mortgage executed by Wolfe & Son in favor of Vance and others, was not so executed with the fraudulent intent to hinder or delay creditors, and that it should be construed as a chattel mortgage.

The third assignment of error, complaining of the action of the court in overruling the plaintiff's application to amend their complaint and attachment affidavit, is not well taken. The attachment proceedings having been brought and the question of the right of attachment having been fully determined, under one section of the statute, we do not think an amendment to the original affidavit in attachment should be allowed. Such action would result in permitting the plaintiff to re-try his cause. The court should only permit such amendments as do not change the cause of action, and which give to the plaintiff no rights which he did not have when the suit was instituted. (*Pierce v. Myers*, 28 Kan. 364.)

The judgment of the lower court is sustained.

All the Justices concurring.