## REBECCA A. SMITH *et al.* v. J. H. BAKER *et al.*

1. INSOLVENT DEBTORS—*Preference of Creditors—Assignments.* The right of an insolvent debtor to pay one or more creditors in preference to others, and the right to make a general assignment for the benefit of all his creditors, ratably, are distict and independent rights.

2. INSOLVENT DEBTORS—*Conveyances to Preferred Creditors—When Not an Assignment.* Where an insolvent debtor makes conveyance of the whole of his property, by bill of sale or chattel mortgage, to one or more of his creditors, in good faith, and in absolute executed payment of a *bona fide* debt, or for the security of a *bona fide* indebtedness, although in exclusion of other creditors, the transaction lacks the essential elements of a trust and cannot be brought within the range of the statute relating to voluntary assignments. The statute regulating and permitting voluntary assignments, by insolvent debtors for the benefit of creditors, was not intended to and does not affect or qualify the right of such debtor to make preferences among their creditors, under § 4, ch. 27, of the Statutes.

3. INSOLVENT DEBTORS—*Assigments and Conveyances by—Preferring Creditors In.* Under the laws of this territory, in 1893, an insolvent debtor had two ways in which he might dispose of his estate: *First,* Under § 4, ch. 27, Statutes of 1893, by using the same to pay or secure his debt to one or any number of his creditors. *Second,* if he desired to distribute his estate equally to all his creditors, he might do so under the assignment law; if he elected to distribute his estate under the assignment law, such distribution was required to be for the benefit of all creditors equally, and the assignment could not create preferences in favor of any.

4. STATUTE OF OTHER JURISDICTION—*Legislative Adoption of.* Where the legislature of one state or jurisdiction adopts a statute in force in another jurisdiction which has already received a construction in its courts, it is presumed to adopt the construction thus given; but to sustain the presumption, such construction must have been placed thereon by the highest judicial tribunal authorized to pass upon the question, and such construction must have been so long established as to have been known, or so long that it reasonably might have been known, to the legislature adopting it.

*Error from the District Court of Canadian County.*

### STATEMENT OF FACTS.

The judgment of the court below, from which this appeal is prosecuted, was upon a motion for judgment

upon the petition and answer in the cause, and adjudging certain conveyances to be an assignment for the benefit of creditors, appointing a receiver to take charge of the property and effects conveyed, and for a sale thereof, and decreeing that the funds arising from such sale should be held by such receiver in trust to be applied in payment of the costs and expenses of the suit and of the indebtedness due the creditors of the persons making such conveyances.    The facts, averred or admitted, in said petition and answer, may be fairly stated thus: On April 28, 1893, the plaintiffs in error, Kate Smith and Florence Smith, formed a general partnership for the purpose of carrying on the business of general merchants, at El Reno, in said county, under the firm name and style of Smith & Smith. On May 1, 1893, Rebecca A. Smith, also a plaintiff in error, and the mother-in-law of said Kate Smith and Florence Smith, loaned to said firm $3,120 and took their notes for said amount.    She afterwards loaned to said firm various sums amounting to $1,853, and on October 11, 1893, took their notes therefor; that all of the money for which said several notes were given, was used by said firm of Smith & Smith in their business; that said firm had two store rooms, in one of which they carried on the business of druggists and carried a stock of drugs, etc., in the other, a general stock of dry goods, groceries, boots, shoes, etc.    The firm of Smith & Smith became, in the regular course of business, indebted to the defendants in error, and on November 23, 1893, numerous actions had been commenced against them, in the courts of said county, by divers creditors, other than the defendants in error, and judgments were about to be taken in said actions; that said firm was then insolvent and unable to meet their obligations, as such obligations became due; that said Rebecca A. Smith was, on said twenty-third day

of November, 1893, aware of the financial condition of the firm of Smith & Smith, and knew that said firm was insolvent. That on said day, she purchased of Smith & Smith their entire stock of drugs, which was valued and invoiced at $1,870, and took a bill of sale therefor. That she took immediate actual possession of said drug store and thereafter carried on the business in her own name. The consideration for the sale of said drug store was the cancellation of the said notes, dated October 11, 1893. That said bill of sale was duly recorded on the twenty-third day of November, 1893. That the firm of Smith & Smith was then, and remained, indebted to the said Rebecca A. Smith to the full amount of the notes given by them on the first day of May, 1893; and on demand of said Rebecca A. Smith, for security, on said notes, the firm of Smith & Smith, on said twenty-third day of November, 1893, executed and delivered to her a chattel mortgage on the stock of dry goods and groceries, in their other store, which mortgage was duly recorded on said date. At the time of making said bill of sale and the said chattel mortgage, the firm of Smith & Smith had no real estate, and the said bill of sale and chattel mortgage covered and conveyed all the personal property which said firm owned or possessed, except that which might have been exempt by law, from seizure and sale under attachment or execution. The indebtedness for which said bill of sale and chattel mortgage was given, was a *bona fide* subsisting indebtedness. When they made said bill of sale and chattel mortgage, the firm knew that they could not continue their business longer and must abandon the same. And said Rebecca A. Smith then knew that said firm, by reason of their inability to meet their debts and liabilities, could not longer continue their said business. That it was

stipulated in the said chattel mortgage that the mortgagors might retain possession of the goods mortgaged and sell the same in the usual course of trade, as the agent of the said Rebecca A. Smith, accounting to her for the proceeds of such sales, less certain expenses in selling the same. That immediately on the delivery of said bill of sale and chattel mortgage, Rebecca A. Smith took possession of all of said property so conveyed, and continued to operate the said stores and run the same until November 25, 1893, when, under the order of the court in this cause, a receiver was appointed and took possession thereof. That Fremont Smith and William C. Smith are the husbands, respectively, of said Kate Smith and Florence Smith, and were made parties defendant in said petition; that on the first day of December, 1893, plaintiffs in error filed, in said cause, a motion to set aside the order appointing said receiver, on the grounds (1) that said action was not pending at the time said receiver was appointed; and (2) that neither of the defendants had any notice or knowledge that any application had been or would be made for the appointment of a receiver in said cause, prior to the appointment of said receiver. That said motion was by the court overruled, and by plaintiff in error exception was taken. The plaintiffs in error filed a demurrer to the petition in said cause, which demurrer was by the court overruled, and exception was duly saved. From the final judment and decree, in said cause, plaintiffs in error have appealed, and the cause is brought to this court for review.

*C. H. Carswell* and *Dille & Schmook*, for plaintiffs in error.

*W. H. Criley, Forest & Gunn, Blake & Blake* and *Keaton & Cotteral,* for defendants in error.

The opinion of the court was delivered by

TARSNEY, J.: The question, in this case, is directly this: Is the legal effect of the above stated facts to make the bill of sale and chattel mortgage a general assignment, by Smith & Smith, for the benefit of their creditors? At common law, a debtor, in failing circumstances, may use any and all of his property to pay one or more of his creditors in preference to others. There was no principle or rule of the common law, which limited or controlled the right of an insolvent debtor in the distribution of his assets, provided they were applied in discharge of his *bona fide* debts. At the common law, an insolvent debtor might make preferences among his creditors and use the whole, or any portion of his property, in the payment of one, or any number, of his creditors, or give the whole, or any part of his property, as security for the payment of debts, to one or any number of his creditors. The statute of this territory recognizes and affirms the right of a debtor to prefer one creditor to another. "A debtor may pay one creditor in preference to another, or may give to one creditor security for the payment of his demands in preference to another." (Sec. 4, ch. 27, Stat. 1893). This provision simply codifies the common law, and unless qualified by other statutory provisions, the right of the debtor to select and prefer one creditor to another, and to transfer his property in payment, or to convey it as a security to one or more of his creditors, remains as at common law; and it follows that Smith & Smith, in making payment of a part of their debts to Rebecca A. Smith, by their bill of sale, and in securing the remainder of said debt by their chattel mortgage, were exercising a right, recognized and assured to them, both by the common and statutory laws, unless such right has been limited or taken away

by other provisions of the statute.   This, it is contended
by defendants in error, has been done by the  statutes of
this territory, regulating assignments in trust, by insolv-
ent debtors, for the benefit of their creditors.   Section
1, ch. 5, of the Statutes of Oklahoma, provides:

"An insolvent debtor may, in good faith, execute an
assignment of property to one or more assignees, in
trust, towards the satisfaction of his creditors in con-
formity to the provisions of this title, subject, however,
to the provisions of this code, relative to trusts and fraud-
ulent transfers, and to the restrictions imposed by law
upon assignments by special partnerships, by incorpora-
tions, or by other specific classes of persons:   Provided,
however, that such assignment shall not be valid if it be
upon, or contain any trust or condition, by which any
creditor is to receive a preference or priority over any
other creditor; but in such case, the property of the
insolvent shall become a trust fund to be administered in
equity, in the district court, and shall inure to the bene-
fit of all the creditors in proportion to their respective
claims or demands."

The contention of counsel for defendants in error
being, that the two instruments, the bill of sale and
chattel mortgage, and all the transactions connected
with them, were contemporaneous, and the firm being in
failing circumstances, amounted to an assignment within
the purview of this statute.   That when an insolvent
debtor makes a general distribution of all his property
and effects, whether to all or only a part of his creditors,
thereby abandoning his business or putting himself in
such situation that it is impossible for him to continue
it, he has made a voluntary assignment, in effect, under
the assignment law; and this, whether the instrument by
which the operation is effected be denominated an assign-
ment, or mortgage, or bill of sale, or whether by several
of either or both, so long as the instrument or instruments

employed by the debtor, whatever called, works an absolute transfer, substantially, of all the property and effects of an insolvent, to another or others, with a design on his part that it shall do so, and that his connection with the business shall cease, it is an assignment under the statute.

Is this the meaning of our voluntary assignment law, if interpreted by the usual rules and canons of interpretation, and was such the intention of the legislature in enacting it? Unenlightened and unembarrassed by somewhat conflicting judicial decisions, we would have no difficulty in determining the meaning and effect of our assignment laws, or in answering the above question, involving the rights of the parties in this controversy; as we should conclude that, unless the position of defendants in error be untenable, there could be no conditions surrounding an insolvent debtor or. his estate upon which the provisions of § 4, ch. 27, of the statutes could operative. That section puts no limitation on the amount of property, which a debtor may use in payment, or as security for the payment, of a debt to one creditor in preference to another.

It does not limit its operation to those only who, making such payment, or giving such security, continue or intend to continue in business, nor does it prohibit such payment or security, by way of preference, where the debtor thereby puts himself in such situation that it is impossible for him to continue his business; nor can it be said that it was not intended to include or apply to insolvent debtors, for none but insolvent debtors would need to make preferences or require the sanction of law. therefor.

The general scheme and plan of our assignment law,

as we would deduce the same from the plain language of its various provisions, would seem to comprehend no change as to the right of the debtor to control and dispose of his property, directly, for the payment, or in security, of his debts; but that under § 4, ch. 27, he might, as theretofore, in good faith, sell his property, mortgage or pledge it, to secure a *bona fide* debt.  That it recognized the rights of creditors to result from their vigilance, and that by being vigilant they might require the debtor, whose estate would not be sufficient to pay all his debts in full, to satisfy or secure their particular demands, in full, though it should result in reducing the *pro rata* amount which other creditors might be able to acquire, out of the estate, and that such debtor might lawfully satisfy in full the debts and demands of such vigilant creditors; but that when such debtor reached the point where he was ready and determined to yield the dominion of his property, and did not desire to make preference of one creditor over another, but did desire that his entire estate should be equally distributed for the benefit of all his creditors, he might avail himself of the provisions of the assignment law, and by placing his entire estate in trust for the benefit of all his creditors, prevent any of such creditors from acquiring a preference, by attachments, executions or other processes of law.

It would seem to have been the intention of the legislature not to take away any right which the debtor had at the common law, but to extend his dominion over his estate and to provide a means whereby he might voluntarily protect such assets from enforced preferences, by any of his creditors, and save the same for equal distribution among all.  In no sense, does the language of

the statute indicate an intention to compel an involuntary or compulsory distribution of the insolvent's estate. An absolute conveyance, or a mortgage, does not come within the requirements of the instrument by which it provides that the estate shall be transferred. It requires the transfer to be in trust, and that it shall be to one or more assignees, who may execute the trust. It provides when a court of equity may take charge of the insolvent estate and distribute it among all his creditors, viz: when under the instrument of assignment, for which it provides, "any creditor is to receive a preference or priority over any other creditor." Construing this statute in connection with § 4, ch. 27, and giving to each the natural and plain meaning of the language employed, and that it was the intention of the legislature that both should run together and be operative, and this we must do, we could not construe them to mean otherwise than that an insolvent debtor has two ways in which he may dispose of his estate, first, under § 4, ch. 27, by using the same to pay or secure his debts due to one or any number of his creditors; but if he shall choose or desire to distribute his estate equally to all his creditors, he may do so under the assignment law; and that if he so elects, he must distribute the same equally to all and cannot create preferences in favor of any.

We are not, however, left to depend upon our own reasonings and conclusions, as to the meaning of the language of the statute. This, and analogous statutes, have received the interpretation of nearly every court in the country, and the great weight of authority is in accord with the views herein expressed. It fact, the authorities would seem to be practically unanimous in holding that, notwithstanding such assignment law, an

insolvent debtor may dispose of his estate by other modes of conveyance than by the assignment therin pro-vided for, and may make preference of certain of his creditors to the exclusion of others. The course of de-cisions, and the discussion therein of this question, is so familiar to the bench and bar, that a review of the author-ities herein could serve no useful purpose, and we content ourselves with simply citing a few of the most recent decisions. (*Union Bank Chicago v. Kansas City Bank*, 130 U. S. 235; *Hardt v. Heidwayer*, 150 U. S. 547; *Union Bank of Chicago v. Kansas City Bank*, 126 U. S. 235; *Young v. Clapp*, 147 Ill. 176; *Farwell v. Wilson*, 133 Ill. 45; *Frommne v. Jones*, 13 Iowa, 474; *Buel v. Buckingham*, 16 Iowa, 284; *Warner v. Littlefield*, 89 Mich. 329; *Bank of Montreal v. Salt & Lumber Com-pany*, 90 Mich. 345; *Moore v. Meyer*, 47 Fed. Rep. 99; *Crow v. Beardsley*, 68 Mo. 435; *Webber v. Mick*, 131 Ill. 520; Burrill Assignm. § 3; *Ingram v. Osborne*, 70 Wis. 184; *Giddings v. Sears*. 115 Mass. 505; *Covan-hovan v. Hart*, 21 Penn. State, 495; *Hargadine v. Hen-derson*, 97 Mo. 375; *May v. Tenney*, 13 Sup. Ct. 481; *Manning v. Beck*, 129 N Y. 1; *Thompkins v. Hunter*, 24 N. Y. Supp. 8; *Costello v. Chamberlain*, 53 N. Y. 1034; *Gilbert v. McCorkle*, 110 Ind. 215; *Cutter v. Pollock*, [N. Dak.], 59 N. W. 1062; *Sandwich Manfg.Co. v. Max*, [S. Dak.], 58 N.W. 14; *Jewett v. Downs*, [S. Dak.], 60 N. W. 76; *Jaffray v. Wolf*, 1 Okla. 312).

In this last case, the present learned chief justice, speaking for the court, used this language:

"After a careful review of all the authorities at our disposal, while we find that some of the courts have so construed the assignment laws of the several states, as being against the proposition that a creditor may in good faith transfer all his property for a payment of a part of

his indebtedness, yet we are of the opinion that such construction is strained and not in harmony with the intention of the law makers who enacted the statute. *    *    If the legislatures of the several states, which have enacted assignment laws, had intended to prevent a person in failing circumstances from using his property in the payment of such of his *bona fide* debts as he might desire, they could easily have found language to express such intention. The very fact that the statutes are not clearly susceptible of such construction is a good reason for not so interpreting them."

The rule contended for by defendants in error has been upheld in the case of *Straw v. Jenks*, 6 Dak. 414. In that case, the direct opposite of what we have shown to be the general rule, was sustained, and it was there held, under a statute identical in language with our own, that: "Where an insolvent debtor mortgages all his property to one creditor and puts the mortgagee in possession, he divests himself of all title therein, but the mortgage becomes, in effect, an assignment for the benefit of all the creditors," and counsel for defendants in error contend that our statute, in relation to assignments, was adopted from the statutes of the territory of Dakota, after the decision in *Straw v. Jenks*; that such adoption carried with it the construction placed upon it by the decision in that case, and made such construction a part of the statute, and that such construction should be followed by this court; that upon the authority of that case, the conclusion of this court and the rule established in *Jaffray v. Wolf, supra*, must be overruled and reversed. If the rule, thus contended for, that the previous construction of an adopted statute is a part of the statute, must prevail, then it would not avail to show that the authorities upon which that case was based did not support its conclusion; or that the conclusion of the

court resulted from a clear misinterpretation of the authorities, which it cited, and upon which it relied. That its conclusion has been almost universally condemned as unsound; that nearly every court whose decision was cited therein, has since repudiated the interpretation placed upon such decision therein. It would be a sufficient answer to the position of defendants in error, to say, that no decision is conclusive anywhere, except as to its application of the law to the facts in the particular case before it, and that the principle of the case of *Straw v. Jenks*, applicable to the facts therein stated, is clearly distinguishable from the case at bar. In this case, there is no element of trust. In *Straw v. Jenks* there were several mortgages to different mortgagees, and the property was placed in the hands of an agent or trustee in trust for the purpose of selling and dividing the proceeds among the several mortgagees. In *Sandwich Manufacturing Co. v. Max*, 58 N. W. 14, *supra*, the supreme court of South Dakota, in expressly overruling *Straw v. Jenks*, says:

"It is quite probable that the opinion of the learned judge, which was elaborate and instructive, laid down some propositions not necessary to a decision of that case upon the facts presented, and that the law which might perhaps have properly decided that case, does not, necessarily, this. In that case, the mortgagors made several chattel mortgages at practically the same time, to as many different creditors. They were all immediately placed in the hands of an agent or trustee for enforcement. The acts were all so nearly simultaneous, and so closely related to each other, as to suggest the deliberate intention of the mortgagor to thus create a trust in such agent, or trustee, for the benefit of such preferred creditors."

Conceding that the case of *Straw v. Jenks* is applicable and in point upon the main question involved in this

22—v

case, we are not prepared to say that the doctrine of adoption sought to be invoked by defendents in error can be successfully invoked in this case. We cannot say, judicially, that the statute of assignment of this territory was, in a legal sense, adopted from the statute of the territory of Dakota. [It is true that it is the exact transcript of the Dakota statute, but there is nothing in the legislative enactments of this territory which affirmatively shows a legislative intent of adoption from that territory; and as the statute is substantially that of many of the older states, and accurately the same as that of some, having no legislative action or declaration to inform us, we cannot say that the legislature of this territory intended to adopt it from the territory of Dakota, with the construction that might there have been given to it. Nor can the doctrine apply in this case for the reason that the essential elements upon which it is based are here totally wanting. The doctrine itself is but founded upon a presumption, that is, that where one state or sovereignity adopts a statute of another state or sovereignity, which has already received a known and definite construction in its courts, it is presumed to adopt the construction thus given. (*Ballance v. Rankins*, 54 Amer. Decis. 414). The essential elements upon which the presumption is based is, that it has already received a known and definite construction. The construction must have been fixed and uniform and must have been so long established as to have been known, or so that it reasonably might have been known, to the legislature adopting it. (*Hunter v. Truckee Lodge*, 14 Nev. 38). The meaning of a statute cannot be considered as settled by judicial construction, so as to carry that construction with it to the jurisdiction where it is adopted, when it has not been so settled by the highest judicial authority which

can pass upon the question. (*Andrews v. Hovey*, 124 U. S. 716). The supreme court of the territory of Dakota was not the highest tribunal that could have passed upon the question involved in that case, as an appeal would lie therein to the supreme court of the United States. It would be giving a ridiculous construction and meaning to the plain words of the language to say that one case, which was overruled and repudiated almost before it was officially published, could give a settled construction to the meaning of a statute which should bind a foreign jurisdiction.

As the legislature has, by an act approved March 8, 1895, (Session Laws 1895, p. 106), removed all occasion for future controversy over the question involved in this case, and as the rights of all the parties to this controversy and of all other parties to matters pending in litigation, arising out of like transactions, have attached since the decision of this court in *Jaffray v. Wolf* was rendered, and such rights involved in pending litigation may be presumed to have been acquired or to have attached on the faith of that decision, we would, though much less satisfied than we are, of the correctness of the views and conclusions herein stated, hesitate long before adopting contrary views, which could result only in the divesting of rights and interests acquired in good faith and for valuable considerations.

For the reasons stated, we are of the opinion that the law of this case was correctly stated by the chief justice in *Jaffary v. Wolf, supra*, and it therefore follows that the judgment of the court below was erroneous and should be reversed.

It is therefore ordered that the judgment of the court below be reversed and judgment is herein rendered in

this case for the defendants and against the plaintiffs, and it is further ordered that all funds derived from the sale of the property taken possession of by the receiver appointed by the court below in this action, and now in the possession of said receiver, or the clerk of said court, be immediately turned over to the defendant, Rebecca A. Smith.

Keaton, J., who was of counsel, not sitting; Dale, C. J., and McAtee, J., concurring; Bierer, J., dissenting.