HOWARD GRAY, Respondent, v. WESTERN UNION TELEGRAPH COMPANY, Appellant.

### Kansas City Court of Appeals, June 18, 1900.

**Telegrams:** WAR REVENUE: STAMP TAX: STATUTORY CONSTRUCTION. The war revenue act of Congress of 1898, requires the maker and sender of a telegraphic dispatch to buy, affix and cancel the revenue stamp required on the dispatch; and the penalty of ten dollars imposed on the telegraph company for sending an unstamped message is merely to aid the government in compelling the sender to stamp the same.

Appeal from the Jasper Circuit Court.—*Hon. J. D. Perkins,* Judge.

REVERSED.

*George H. Fearons, Thomas & Hackney* and *Karnes, New & Krauthoff* for appellant.

(1) The United States commissioner of internal revenue, the officer charged with the enforcement of the revenue act of 1898, has decided that "a telegraphic dispatch or message is required to be stamped by the person who makes, signs or issues it." Gould & Savary on the War Revenue Law of 1898, p. 84. In North Carolina and Georgia, telegraph companies are, to a certain extent, subject to the jurisdiction of state boards of railroad commissioners; and each of these bodies has officially promulgated the same construction of the statute. Ross v. Railroad, 111 Mo. 18, 25, 26; Endlich on Interpretation of Statutes, sec. 360; Ins. Co. v. Hoge, 21

How. 35; Hahn v. U. S., 107 U. S. 402, 406; Brown v. U. S., 113 U. S. 568; Kirk v. Telegraph Co., 90 Fed. Rep. 809; Venable v. Railway, 112 Mo. 103. (2) An inspection of the act will disclose that the interpretation by the commissioner of internal revenue, and the opinion of Judge Morrow, acquiesced in by all except the plaintiff in this case, is correct. Collector v. Doswell, 16 Wall. 156, 158; Express Co. v. Caldwell, 21 Wall. 264, 269, 270. (3) The importance of telegraphic communication and the extent to which it is resorted to, have been graphically described by the supreme court: Tel. Co. v. Tel. Co., 96 U. S. 1, 9, 10, 20; Telegraph Co. v. Texas, 105 U. S. 460, 464; Primrose v. Tel. Co., 154 U. S. 1, 14; Tel. Co. v. Pendleton, 122 U. S. 347, 356; Pegram v. Telegraph Co., 100 N. C. 28, 34; Thompson, Electricity, sec. 137; Croswell, Electricity, sec. 369, 491; Breese v. Telegraph Co., 48 N. Y. 132, 137, 138; Redpath v. Tel. Co., 112 Mass. 71, 72; Passmore v. Tel. Co., 78 Pa. St. 238, 241; Tel. Co. v. Reynolds, 77 Va. 173, 184; Ayer v. Tel. Co., 79 Me. 493, 497; Kiley v. Tel. Co., 109 N. Y. 231, 235, 237; Tel. Co. v. Stevenson, 128 Pa. St. 442, 455; Gillis v. Tel. Co., 61 Vt. 461, 463; Tel. Co. v. Carew, 15 Mich. 525, 536; Primrose v. Tel. Co., 154 U. S. 1, 17; Grinnell v. Tel. Co., 113 Mass. 299, 306; Hill v. Tel. Co., 85 Ga. 425; Croswell, Electricity, sec. 453; Thompson, Electricity, sec. 209; Tel. Co. v. Dozier, 67 Miss. 288, 291; Tel. Co. v. Henderson, 89 Ala. 510, 515; Tel. Co. v. Liddell, 68 Miss. 1, 5; Tel. Co. v. Edsall, 63 Tex. 668, 676, 677; People v. Tel. Co., 166 Ill. 15, 21; 2 Shearm. & Redf. Negl. (5 Ed.), sec. 546; Gray, Communication by Telegraph, sec. 13, p. 22; Thompson, Electricity, sec. 153; Croswell, Electricity, sec. 369; Stamey v. Tel. Co., 92 Ga. 613; Baring v. Revenue Commissioners, 1 Q. B. 78, 88, *et seq.;* affirmed, *sub nom;* Lord Revelstoke v. Revenue Commissioners, A. C. 565. (4) The act of Congress is, of course, to be construed

and its terms applied in the light of and in subordination to these well-known facts and established rulings on the subject. United States v. Isham, 17 Wall. 496, 502, 504; Selden v. Trust Co., 94 U. S. 419, 421, 422; Trust Co. v. Condon, 61 Fed. Rep. 84, 91, 92; Schriefer v. Wood, 5 Blatchf. 215. (5) The act of June 13, 1898, is, in many important respects, a re-enactment of the provisions of the Stamp Acts brought into being during the Civil War, and especially of the one approved July 1, 1862 (12 Stat. L. 432). Callaghan v. McCredy, 48 Pa. St. 463, 465, 466; Myers v. Smith, 48 Barb. 614, 636; Maynard v. Johnson, 2 Nev. 16; Suth. Stat. Construction, sec. 256, pp. 336, 337; McDonald v. Hovey, 110 U. S. 619, 627, 628; Ex parte Campbell, L. R. 5 Ch. App. 703, 706; Willis v. Trust, etc., Co., 169 U. S. 295, 307.

*Howard Gray* for respondent.

(1) The law requires the stamp tax to be paid by railroad companies, carriers and express companies. Attorney-General v. Express Co., 77 N. W. Rep. 317. (2) The cardinal principle in the interpretation of law is to unfold the true intent of the lawgiver from the text in which he has endeavored to express it. St. Louis v. Lane, 110 Mo. 254; St. Joseph v. Landis, 54 Mo. App. 315. Occasionally the letter of the statute must be narrowed to conform to its evident intent. Kane v. Railroad, 112 Mo. 34. (3) The legislative intent is to be gathered from every part of the statute taken and compared together and in ascertaining the true intent and purport of a particular section, it is permissible to resort to other statutes on the same subject. Connor v. Railroad, 59 Mo. 285; State v. Diveling, 66 Mo. 375. (4) Even though the court should hold that by the terms of the language used and strictly construed, the stamp tax should be

paid by the plaintiff, yet such a construction would lead to the manifest contradiction of the apparent purpose of the statute, and the court should modify the literal meaning of the words used. Cole v. Skrainka, 105 Mo. 303; Connor v. Railroad, 59 Mo. 285; Selden v. Hall, 21 Mo. App. 452; (5) To say that the plaintiff should pay the stamp tax in this case is to place congress in the ridiculous position of passing a law providing that express companies and telephone companies and all other corporations of the same nature as this appellant, should pay the tax and then exempt companies like appellant from paying any tax whatever. This construction will never be placed on the statute if any other reasonable one can be given. Connor v. Railroad, 59 Mo. 285. (6) Statutes must be construed with reference to the whole system of which they form a part. Therefore statutes on cognate subjects may be referred to, though not strictly *in pari materia*, in order to elucidate the intention of the legislature in enacting any given statute. St. Louis v. Howard, 119 Mo. 41; Sutherland on Statutory Construction, secs. 283, 284.

ELLISON, J.—The plaintiff sent three telegraphic dispatches over defendant's wires and was compelled by defendand to affix a one cent internal revenue stamp to each dispatch and pay for the same, as a condition to accepting and transmitting. This action was then instituted by plaintiff to recover of defendant the amount paid for the stamps. He obtained judgment in the trial court.

The question presented involves a construction of the war revenue law enacted by Congress in 1898. The particular statute upon which plaintiff's claim is founded is section 18 of said law, which reads as follows:

"Sec. 18. That on and after the first day of July, eighteen hundred and ninety-eight, no telegraph company or

its agent or employee shall transmit to any person any dispatch or message without an adhesive stamp, denoting the tax imposed by this Act, being affixed to a copy thereof, or having the same stamped thereupon, and in default thereof shall incur a penalty of ten dollars: Provided, that only one stamp shall be required on each dispatch or message, whether sent through one or more companies: Provided, that the messages or dispatches of the officers and employees of any telegraph or telephone company concerning the affairs and service of the company and like messages or dispatches of the officials and employees of railroad companies sent over the wires on their respective railroads, shall be exempt from this requirement: Provided further, that messages of officers and employees of the Government on official business shall be exempt from the taxes herein imposed upon telegraphic and telephonic messages."

It will be noticed that this section does not in terms declare whether the telegraph company or the sender shall pay for the stamp. Since it is the duty of a telegraph company to send dispatches offered for transmission it might reasonably be contended, if we were confined alone to the section quoted, that the company should pay the tax in order to perform its fixed duty. But that section is not all which the statute embraces on this subject. Sections 6 and 7 bear directly upon it and, in our opinion, make it clear that the Congress intended to put the tax upon the person sending and not the company receiving the message. Those sections read as follows:

"Sec. 6. That on and after the first day of July, eighteen hundred and ninety-eight, there shall be levied, collected, and paid, for and in respect of the several bonds, debentures, or certificates of stock and of indebtedness, and other documents, instruments, matters, and things mentioned an described in Schedule A of this act, or for or in

respect of the vellum, parchment, or paper upon which such instruments, matters, or things, or any of them, shall be written or printed by any person or persons, or party who shall make, sign, or issue the same, or for whose use or benefit the same shall be made, signed, or issued, the several taxes or sums of money set down in figures against the same, respectively or, otherwise specified or set forth in the said schedule.    *    *    *."

(Schedule A provides for stamp of one cent on telegraphic messages.)

"Sec. 7.    That if any person or persons shall make, sign, or issue, or cause to be made, signed or issued, any instrument, document, or paper of any kind or description whatsoever, without the same being duly stamped for denoting the tax hereby imposed thereon, or without having thereupon an adhesive stamp to denote said tax, such person or persons shall be deemed guilty of a misdemeanor, and upon conviction thereof shall pay a fine of not more than one hundred dollars, at the discretion of the court, and such instrument, document, or paper, as aforesaid, shall not be competent evidence in any court."

These sections so clearly place the burden and duty upon the sender as to leave no room for doubt that it was not intended by section 18, to put either on the receiving company.    The penalty of ten dollars imposed on the company by that section was merely to aid the government in compelling the sender to stamp his message.    It is a means provided to enforce the burden imposed upon him by sections 6 and 7.    That is to say, no telegraph company can lawfully transmit his message until he shall have stamped it. Carriers are, in certain instances and under certain conditions, prevented by law under penalty, from transporting persons or animals suspected of disease without certain certificates, and it could as well be said that such statute imposed

the duty of obtaining and paying for the certificates as to say that section 18 imposed the duty of paying for the stamp required to be affixed to a message on the company receiving it of the sender.

Since sections 6 and 7 so unmistakably make it the duty of the sender to affix the stamp, to contend that section 18 makes it also the duty of the receiver, is to be driven to the position that both parties are so required. Such construction is not justified by the language of the statute and it would furthermore be so unreasonable as to justify the conclusion that it was not intended by the Congress, in the absence of a clear expression that it was so intended. That the sender is the person intended to pay the tax is further disclosed by the discrimination made in the penalty imposed. He must suffer a fine of $100 for a violation of the law while the receiving company has only to pay one-tenth that sum for its transgression. Furthermore, the message unstamped is not receivable in evidence, which is an additional burden cast upon the sender, for it is he, and not the company, who must suffer on account of such disability.

Again it is the sender who, in the language of the Act, "makes, signs, or issues" the message, and in this respect he may be likened to him who makes, signs, or issues a bill of exchange or deed. It would scarcely be contended that a banker under penalty for paying an unstamped bill, or that a grantee or a recorder, under penalty for receiving an unstamped deed, should thereby be held to be the party primarily intended to pay for the stamp, unless it was so clearly expressed by the statute as to avoid any other construction, and as it is so expressed in section 11 as to bills drawn without, and payable within, the United States.

The very question before us has been presented to the circuit court of the United States in California, and it was said:

Vol. 85 app—9

"The document being subject to tax under Schedule A, the fine or penalty imposed for the omission to affix and cancel the proper stamp, is, under section 7, imposed upon the person who makes, signs or issues the document. The statute is in the disjunctive, and reaches not only the omission of the person who issues a document subject to the tax, but the maker and signer of the instrument. The law for this purpose takes notice therefore, of the person who writes out and signs a dispatch, and makes him liable for the omission to stamp the instrument he creates. By the terms of the stamp schedule, the tax of one cent is placed upon this instrument as prepared by the sender, without reference to any act of the telegraph company in transmitting the message to its destination." Kirk v. Western Union, 90 Fed. Rep. 809.

"There was an internal revenue war tax authorized by Congress in 1862 to meet expenses in the Civil War. Many provisions of that law are similar to those of the present law, and we may well look to the interpretation given that Act for a guide to the true meaning of this. "In the interpretation of re-enacted statutes the courts will follow the construction which they received when previously in force." Sutherland Const. Statutes, sec. 256; McDonald v. Hovey, 110 U. S. 619; Willis v. Eastern Trust Co., 169 U. S. 295.

By the statute of 1862, deeds for real estate were required to be stamped and a question arose in Callahan v. McCredy, 48 Pa. St. 463, whether the vendor or vendee should pay for the stamp. The court, in speaking of the sections of the statutes, said: "These sections manifestly contemplate the affixing and cancelling the stamp by the party who makes and signs the instrument. And how can he affix or cancel it except he buy it? How else can he

escape the penalty? How else make a deed that shall not be invalid and of no effect?"

Our conclusion is that the plain terms of the statute impose the burden of the stamp tax on telegrams on the sender. The judgment must therefore be reversed. *Smith, P. J.*, concurs; *Gill J.*, absent.