# WILLIS v. EASTERN TRUST AND BANKING COM-PANY.

## CERTIORARI TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 888. Submitted October 18, 1897. — Decided February 21, 1898.

A summary process to recover possession of land, under the landlord and tenant act of the District of Columbia, (Rev. Stat. D. C. c. 19,) can be maintained only when the conventional relation of landlord and tenant exists or has existed between the parties; and cannot be maintained by a mortgagee against his mortgagor in possession after breach of condition of the mortgage, although the mortgage contains a provision that until default the mortgagor shall be permitted to possess and enjoy the premises, and to take and use the rents and profits thereof, "in the same manner, to the same extent, and with the same effect, as if this deed had not been made."

THIS was a summary process to recover possession of land in the city of Washington, under section 684 of the Revised Statutes of the District of Columbia, commenced September 17, 1894, by complaint before a justice of the peace, by the Eastern Trust and Banking Company against Edward M. Willis and William G. Johnson, each of whom pleaded title in Johnson; and the case was thereupon certified to the Supreme Court of the District of Columbia.

In accordance with a general rule of that court, requiring the plaintiff, in such a process, to file "a declaration making demand for the possession of the premises, with a description thereof, as in ejectment," the plaintiff filed a declaration, demanding possession of the land, describing it by metes and bounds, and alleging that the defendants entered thereon, and unlawfully ejected the plaintiff therefrom, and unlawfully detained the same from the plaintiff.

The parties submitted the case to the determination of the court, without a jury, upon an agreed statement of facts, in substance as follows:

The plaintiff was a corporation organized under a charter granted by the legislature of the State of Maine, by which it

was located at the city of Bangor in the county of Penobscot, and was authorized to establish agencies elsewhere in that State. Johnson was sued as assignee of the American Ice Company, a corporation of Maine, and doing business at Bangor and also at the city of Washington; and Willis was sued as the tenant or lessee of Johnson.

On December 2, 1889, by an indenture, in the nature of a mortgage, executed in Maine, and duly recorded in that State and in the District of Columbia, the American Ice Company conveyed to the Eastern Trust and Banking Company, "and its successors, in trust, with full power of succession to and enjoyment of the franchises of the corporation, all its real estate, wharves, icehouses, boarding-house, stables, boilers, elevator and machinery, situated in the town of Hampden in said county of Penobscot, and in the city of Washington in the District of Columbia, together with all and singular the privileges and appurtenances thereto belonging," to secure the payment of bonds of the ice company to the amount of $40,000, payable to the trust company at its office in Bangor in equal instalments of $5000 each, in three, four, five, six, seven, eight, nine and ten years after date, with interest. The deed provided, among other things, as follows:

First. "Until default shall be made in the payment of the principal or interest of said bonds or some of them, or in the maintenance of insurance, or in the payment of taxes or assessments as herein provided, or until default shall be made in respect to something by these presents required to be done by said party of the first part, the American Ice Company shall be permitted and suffered to possess, manage, develop, operate and enjoy the plant and property herein conveyed, and intended so to be, and to take and use the income, rents, issues and profits thereof, in the same manner, to the same extent, and with the same effect, as if this deed had not been made."

Second. If the ice company shall pay the principal and interest, and do all other things required to be done on its part, this deed shall be void. But if any default shall be made, and shall continue for ninety days, the whole amount of the bonds, principal and interest, shall be deemed immediately due and

payable, "and it shall be lawful for the trustee to enter into or upon the premises and property hereby granted, or intended so to be, and to take possession of the whole or any part thereof," and to sell and dispose of the same by public auction in Bangor, giving notice, as therein required, in newspapers published in Bangor and in Washington, and "in its own name, or in the name of the American Ice Company, to make, execute, acknowledge and deliver to the purchaser or purchasers at such sale a good and sufficient deed or deeds of conveyance of the property so sold ; and any sale made as aforesaid shall be a perpetual bar, both at law and in equity, against the American Ice Company, and all persons claiming by, through or under it, from claiming the property, rights, interests and franchises so sold, or any interest therein." The proceeds of the sale, after payment of expenses, shall be paid over ratably to the bondholders, and the remainder, if any, to the ice company.

Third. "The foregoing provision for a sale under the power aforesaid is cumulative with the ordinary remedy of foreclosure by entry or suit therefor ; and the trustee hereunder may, upon default being made as aforesaid, institute and carry out proceedings to foreclose this mortgage or deed of trust, by suit or otherwise, in such manner as may be authorized by law for the foreclosure of mortgages of real estate. And the American Ice Company hereby waives any and all rights of sale or redemption, now or hereafter provided by the statutes of Maine or of the United States."

The bonds were duly issued, as recited in the mortgage, and were delivered to and held by purchasers for value in the regular course of business. The first instalment of the bonds, and all interest which fell due on or before December 1, 1892, were paid. The rest of the bonded debt, and the interest thereon, were never paid, and were due and payable at the time of the commencement of this suit.

On October 13, 1893, the ice company executed to Johnson an assignment of all its property for the benefit of its creditors, under the act of Congress of February 24, 1893, c. 157. 27 Stat. 474. Johnson accepted the assignment, and assumed

the duties of assignee; and as such, on January 29, 1894, executed to Willis a lease in writing of all the ice company's real estate in the city of Washington, for one year from that date, at a monthly rent of $130.

After the default which took place on December 1, 1893, had continued more than ninety days, a majority of the bondholders directed the trust company to proceed in the execution of the trust. In pursuance of that direction, and of the power contained in the mortgage, the trust company advertised and exposed the whole mortgaged property for sale by auction at Bangor on May 4, 1894. The sale was adjourned until September 8, 1894, when the property was sold, and was purchased by a committee of the bondholders, and for their benefit. The terms of the sale have not yet been complied with, nor any deed made to the purchasers, it being understood and agreed between them and the trustee, at the time of the sale, that the trustee should first obtain possession of the property.

The trust company, on July 30, 1894, caused a thirty days' notice to quit to be served on Johnson and on Willis; and on September 17, 1894, commenced this suit to recover possession of the property by causing a seven days' summons to be issued to each of them by a justice of the peace of the District of Columbia; and thereupon subsequent proceedings took place as above stated.

Upon the agreed statement of facts, the Supreme Court of the District of Columbia gave judgment for the defendants. The plaintiff appealed to the Court of Appeals, which reversed the judgment, and remanded the case with directions to enter judgment for the plaintiff. 6 App. D. C. 375. The defendants sued out a writ of error from this court, which was dismissed for want of jurisdiction. 167 U. S. 76. They then obtained from this court this writ of certiorari to the Court of Appeals, under the act of March 3, 1897, c. 390. 29 Stat. 692; 167 U. S. 746.

*Mr. Calderon Carlisle* and *Mr. William G. Johnson* for Willis and Johnson.

*Mr. B. F. Leighton* for the Trust and Banking Company.

MR. JUSTICE GRAY, after stating the case, delivered the opinion of the court.

Sections 680–691 of the Revised Statutes of the District of Columbia, contained in chapter 19, entitled "Landlord and Tenant," are a reënactment of the act of Congress of July 4, 1864, c. 243, entitled "An act to regulate proceedings in cases between landlord and tenants in the District of Columbia." 13 Stat. 383.

By sections 681 and 682, (reënacting section 1 of the act of 1864,) " a tenancy at will shall not arise or be created without an express contract or letting to that effect, and all occupation, possession or holding of any messuage or real estate, without express contract or lease, or by such contract or lease the terms of which have expired, shall be deemed and held to be tenancies by sufferance;" and "all estates at will and sufferance may be determined by a notice in writing to quit of thirty days."

By section 684, (reënacting section 2 of the act of 1864,) " when forcible entry is made, or when a peaceable entry is made and the possession unlawfully held by force, or when possession is held without right, after the estate is determined by the terms of the lease by its own limitation, or by notice to quit, or otherwise," then, " on written complaint, on oath, of the person entitled to the premises, to a justice of the peace, charging such forcible entry or detainer of real estate, a summons may be issued to a proper officer, commanding the person complained of to appear and show cause why judgment should not be rendered against him."

The statute further provides as follows: The summons shall be served at least seven days before the appearance of the party complained of. If it appears by default, or upon trial, that the plaintiff is entitled to the possession of the premises, he shall have judgment and execution for the possession and costs; if the plaintiff fails to prove his right to possession, the defendant shall have judgment and execution for his costs. If, upon trial, the defendant pleads title in himself, or in another person under whom he claims the premises, the case is

to be certified to the Supreme Court of the District of Columbia, and each party is to recognize to the other, the defendant " to pay all intervening damages and costs and reasonable intervening rent for the premises," and the plaintiff to enter the suit and to pay all costs adjudged against him. An appeal to the same court may be taken by either party against whom judgment is rendered by the justice of the peace. Rev. Stat. D. C. §§ 685–689; Act of July 4, 1864, c. 243, §§ 2–4; 13 Stat. 383, 384.

This plaintiff is the mortgagee of land in the District of Columbia, under a deed of trust to secure the payment of certain bonds, in instalments payable in successive years, with interest; and providing that until default the mortgagor shall be permitted to possess and enjoy the property, and to take and use the income, rents, issues and profits thereof, " in the same manner, to the same extent and to the same effect, as if this deed had not been made;" but that, if any default be made, and be continued ninety days, the trustee may enter upon the property, and sell the same by public auction, or may pursue the ordinary remedy of foreclosure by entry or suit, as authorized by law.

The mortgagor assigned the property to an assignee for the benefit of creditors; the assignee made a lease in writing thereof for a year at a monthly rent; default was made and continued for ninety days; and the mortgagee, after giving the assignee and his lessee thirty days' notice to quit, instituted this process against them to recover possession under the landlord and tenant act of the District of Columbia.

The principal question presented by the record is whether, in a case like this, where there has been neither forcible entry nor detainer by force, a mortgagee entitled to possession after condition broken is within the scope and effect of the statute.

In *Barber* v. *Harris*, (1888) 6 Mackey, 586, affirmed by this court in *Harris* v. *Barber*, (1889) 129 U. S. 366, cited in support of the judgment below, this question was not and could not be decided. That case arose upon a writ of certiorari to a justice of the peace, by which his judgment for

possession under the statute was sought to be set aside upon allegations that the plaintiff was a purchaser at a sale under a mortgage, and the conventional relation of landlord and tenant did not exist between the parties, and therefore the justice of the peace had no jurisdiction. The ground on which both the Supreme Court of the District of Columbia and this court declined to set aside the judgment of the justice of the peace was, that the existence of the relation of landlord and tenant between the parties, and the jurisdiction of the justice of the peace over the case, were sufficiently shown by general allegations in the complaint that the plaintiff was entitled to the possession of the premises, and that they were detained from him and held without right by the defendant, tenant thereof by the sufferance of the plaintiff, and whose tenancy and estate therein had been determined by thirty days' notice to quit; and that these allegations could not be contradicted upon that writ of certiorari. See 6 Mackey, 594, 595; 129 U. S. 368, 371.

In *Jennings* v. *Webb*, (1892) 20 D. C. 317, 322, in which it was decided that one tenant in common could not maintain this form of proceeding against his co-tenant, Justice Cox, speaking for Justices Hagner and James, as well as for himself, said: "There seems to be a little misapprehension of the nature of this proceeding. While our rule requires the plaintiff to file a declaration, as in ejectment, that does not convert the proceeding into an action of ejectment at all, in which the plaintiff recovers upon the strength of his title. In this proceeding, unless he establishes the relation of landlord between himself and the defendant, no matter what the form of declaration is, he is not entitled to recover. I have always held that at special term, and that is the opinion that we entertain now. It is still a landlord and tenant proceeding."

In two earlier cases, a purchaser at a sale under a deed of trust in the nature of a mortgage had been declared, by the Supreme Court of the District of Columbia in general term, to be entitled to maintain this proceeding against the mortgagor, who had remained in possession without the plaintiff's consent, and had been served with a thirty days' notice to quit

But in the first of those cases this was wholly *obiter dictum*, the appeal to the general term being dismissed because the judgment in special term was final; and in the other case no question appears to have been raised upon the construction of the statute. *Luchs* v. *Jones*, (1874) 1 McArthur, 345 ; *Fiske* v. *Bigelow*, (1876) 2 McArthur, 427.

Afterwards, in *Loring* v. *Bartlett*, (1894) 4 App. D. C 1, the Court of Appeals, speaking by Chief Justice Alvey, reversing a judgment of the Supreme Court of the District of Columbia, and quoting from *Birch* v. *Wright*, 1 T. R. 378, 382, 383, refrained from expressing a definite opinion upon the question " whether the simple and ordinary relation of mortgagor and mortgagee involves the relation of ·landlord and tenant by implication of law, within the meaning and sense of the statute ; " and maintained the suit, solely upon the ground that a provision, in a trust deed to secure the payment of promissory notes, by which the mortgagee and her heirs and assigns were to be permitted " to use and occupy the said described premises, and the rents, issues and profits thereof to take, have and apply, to and for her and their sole use and benefit, until default be made in the payment of said notes or any of them," constituted a re-demise from the mortgagee to the mortgagor, which would support a proceeding under the statute. The cases relied on in support of that decision were *Georges Creek Co.* v. *Detmold*, 1 Maryland, 225, 236, and some English cases, all of which were ordinary actions of ejectment, and none of them under statutes like that now in question.

The decision in *Loring* v. *Bartlett* was followed by the Court of Appeals in the present case, without further discussion. 6 App. D. C. 375, 383.

Upon full consideration of the terms of the act of Congress, and in view of the existing state of the law in this country at the time of its passage, this court is unable to concur in the conclusion of the Court of Appeals.

The common saying that a mortgagor in possession is tenant at will to the mortgagee has been often recognized to be a most unsafe guide in defining the relation of mortgagee and

mortgagor, or in construing statutes authorizing landlords to recover possession against their tenants by summary process before a justice of the peace.

In *Moss* v. *Gallimore*, (1779) Lord Mansfield said : " A mortgagor is not properly tenant at will to the mortgagee, for he is not to pay him rent. He is only so *quodam modo*. Nothing is more apt to confound than a simile. When the court, or counsel, call a mortgagor a tenant at will, it is barely a comparison. He is *like* a tenant at will. The mortgagor receives the rent by a tacit agreement with the mortgagee, but the mortgagee may put an end to this agreement when he pleases." 1 Doug. 279, 282, 283. And in *Birch* v. *Wright*, (1786) Mr. Justice Buller said : " He is not a tenant at will, because he is not entitled to the growing crops after the will is determined. He is not considered as tenant at will in those proceedings which are in daily use between a mortgagor and mortgagee ; I mean in ejectments brought for the recovery of the mortgaged lands." 1 T. R. 378, 383.

Under early statutes of the State of New York, providing that any tenant at will, or at sufferance, or for years, holding over without permission of his landlord after the expiration of his term, or after default in the payment of rent, might be removed from the possession upon a proceeding commenced by the landlord before a justice of the peace, it was constantly held by the Supreme Court of the State that a mortgagee could not maintain this process against a mortgagor in possession ; and Chief Justice Savage said that for some purposes, indeed, the mortgagor, after condition broken, was considered as tenant to the mortgagee ; but that the statute " was clearly designed to afford a speedy remedy where the conventional relation of landlord and tenant existed, and not where that relation is created by operation of law ; " and " the legislature never intended that the mortgagee should have a right to proceed under this statute to obtain possession of the mortgaged premises after forfeiture." N. Y. Stat. of 1820, c. 194; 2 Rev. Stat. of 1828, pt. 3, c. 8, tit. 10, §§ 28 *& seq ; Evertson* v. *Sutton*, (1830) 5 Wend. 281, 284; *Roach* v. *Cosine*, (1832) 9 Wend. 227, 231, 232; *Sims* v. *Humphrey*, (1847) 4 Denio, 185, 187 ; *Ben-*

*jamin* v. *Benjamin*, (1851) 5 N. Y. 383, 388; *People* v. *Simpson*, (1863) 28 N. Y. 55, 56.

It is true, as has been heretofore observed by this court, that in the State of New York the courts of law had, by a gradual progress, adopted the views of courts of equity in relation to mortgages, and considered the mortgagor, whilst in possession and before foreclosure, as the real owner, except as against the mortgagee, and as having the right of possession, even as against the mortgagee; whereas by the law of Maryland, prevailing in the District of Columbia, the legal estate is considered as vested in the mortgagee, and, as soon as the estate in mortgage is created, the mortgagee may enter into possession, though he seldom avails himself of that right. *Van Ness* v. *Hyatt*, 13 Pet. 294, 299.

But the mortgagee has been equally held not to be entitled to maintain against the mortgagor a summary landlord and tenant process in States where, as in New England, the mortgagee is held to be the owner of the legal title. 1 Jones on Mortgages, § 58.

The Revised Statutes of Massachusetts of 1836, c. 104, §§ 2, 4–9, contained provisions very similar to those of §§ 2–4 of the act of Congress of July 4, 1864, as to the cases in which and the persons by and against whom the proceedings might be instituted, the service of summons, the form of judgment, and the removal of the case, by certificate or by appeal, into a court of record.

In that chapter of the Massachusetts statutes of 1836, section 2 was as follows: "When any forcible entry shall be made, or when an entry shall be made in a peaceable manner, and the possession shall be unlawfully held by force, and also when the lessee of any lands or tenements, or any person holding under such lessee, shall hold possession of the demised premises, without right, after the determination of the lease, either by its own limitation, or by a notice to quit, as provided in the sixtieth chapter," (section 26 of which provided that estates at will might be terminated by either party by notice of three months, or by the landlord by fourteen days' notice in case of non-payment of rent,) "the person entitled to the premises may

be restored to the possession thereof, in the manner hereinafter provided." And by section 4, " the person entitled to the possession of the premises " might obtain from a justice of the peace a summons to answer to a complaint charging the defendant with being in possession of the land in question, and holding it unlawfully and against the right of the plaintiff.

It was the settled construction of that statute by the Supreme Judicial Court of Massachusetts, that a mortgagee, even after he had entered for the purpose of foreclosure, could not maintain an action against his mortgagor to recover possession of the mortgaged premises. " Whilst the parties stood in the relation of mortgagor and mortgagee," said Chief Justice Shaw, " the defendant was not lessee, within the meaning of this statute. A mortgagor in possession is sometimes, in a loose sense, said to be tenant at will to the mortgagee. But he is not liable to rent, or to account for rents and profits ; these he holds to his own use. He is like a tenant at will, because the mortgagee may enter upon the estate at his will, if he can do so peaceably, when not restrained by covenant." *Larned* v. *Clarke,* (1851) 8 Cush. 29, 31. And again : " The present statute contemplates three cases in which this process will lie : 1. Forcible entry ; 2. Forcible detainer ; 3. A tenant holding against his landlord, either (1) after the determination of a lease by its own limitation ; or (2) after the expiration of a notice to quit duly given ; or (3) after a notice of fourteen days, for non-payment of rent. In the present case, the proof shows no forcible entry, no forcible detainer, no holding over of a tenant of demised premises. These are the only cases contemplated in this statute in which this summary process will lie. Although, in a loose sense, a mortgagor in possession is said to be tenant at will of the mortgagee, yet he is not within the reason or the letter of the Revised Statutes, c. 104, § 2. He is not lessee, or holding under a lessee, or holding demised premises without right, after the determination of the lease. The remedies of a mortgagee are altogether of a different character, clearly marked out by law." *Hastings* v. *Pratt,* (1851) 8 Cush. 121, 123. See also *Dakin* v.

*Allen,* (1851) 8 Cush. 33; *Gerrish* v. *Mason,* (1855) 4 Gray, 432.

In chapter 137 of the General Statutes of Massachusetts of 1860, the provisions of the Revised Statutes of 1836, above mentioned, were substantially reënacted, section 2 being put in the following form: "When a. forcible entry is made, or when a peaceable entry is made and the possession unlawfully held by force, or when the lessee of land or tenements, or a person holding under such lessee, holds possession without right, after the determination of the lease by its own limitation, or by notice to quit, or otherwise, the person entitled to the premises may be restored to the possession in the manner hereinafter provided." The words "or otherwise" were apparently added in that section, because of its having been decided, under the earlier statute, that "the determination of the lease by its own limitation" did not include its determination by the lessor's entry for breach of a condition in the lease. *Fifty Associates* v. *Howland,* (1846) 11 Met. 99; *Whitwell* v. *Harris,* (1871) 106 Mass. 532.

By section 5 of the statute of 1860, "the person entitled to the possession of the premises" may obtain from a justice of the peace a summons "to answer to the complaint of the plaintiff, for that the defendant is in possession of the lands," "which he holds unlawfully and against the right of the plaintiff."

The provision, above quoted, of the statute of 1860, which defines the circumstances under which this summary process may be commenced before a justice of the peace, is almost exactly like the corresponding provision of the act of Congress of 1864, as will appear by putting the two together, with those words of the Massachusetts statute which have been omitted in the act of Congress printed in italics, and the words added in the act of Congress enclosed in brackets, as follows: "When *a* forcible entry is made, or when a peaceable entry is made and the possession unlawfully held by force, or when *the lessee of land or tenements, or a person holding under such lessee, holds* possession [is held] without right, after the *determination* [estate is determined by the terms] of the lease by its own limitation, or by notice to quit, or otherwise."

This provision, as incorporated in the act of Congress, though somewhat condensed in form, is essentially in the same words, and of precisely the same meaning, as the provision of the statute of Massachusetts. While it omits the words " the lessee of land or tenements, or a person holding under such lessee," it still, like the Massachusetts statute, (in cases where there is neither forcible entry nor forcible detainer,) is restricted to cases in which " the lease " has been determined, and differs in this respect from the provision in the first section of the act of Congress, which defines tenancies by sufferance.

The statute of Massachusetts and the act of Congress resemble each other in many other respects. Each authorizes " the person entitled to the premises " to recover possession by complaint to a justice of the peace. Each authorizes the complaint to be in general terms; in Massachusetts, alleging that the defendant is in possession of the land, and holds it unlawfully and against the right of the plaintiff; in the District of Columbia, " charging a forcible entry or detainer of real estate." Each requires the summons to be served seven days before appearance. The provisions as to the form of the judgment of the justice of the peace for either party are exactly alike in both statutes. Each statute provides that, when the title is put in issue, the case may be certified to a court of record; that from any judgment of the justice of the peace an appeal may be taken by either party to that court; and that upon such removal, either by certificate or by the defendant's appeal, the defendant shall recognize to the plaintiff, with sufficient sureties, to pay intervening rent and damages. Mass. Gen. Stat. of 1860, c. 137, §§ 6–10 ; Act of Congress of July 4, 1864, c. 243, §§ 2–4; Rev. Stat. D. C. §§ 684–689.

The resemblance between the provisions of the Massachusetts statute of 1860 and of the act of Congress of 1864 is so remarkable, that it is evident that the latter were taken from the former. This being so, the known and settled construction, which those statutes had received in Massachusetts before the original enactment of the act of Congress, must be considered as having been adopted by Congress with the text thus expounded. *Tucker* v. *Oxley*, 5 Cranch, 34, 42; *Pennock* v.

*Dialogue*, 2 Pet. 1, 18; *Metropolitan Railroad* v. *Moore*, 121 U. S. 558, 572; *Warner* v. *Texas & Pacific Railway*, 164 U. S. 418, 423. In *Metropolitan Railroad* v. *Moore*, just cited, where provisions of statutes of New York, regulating judicial procedure, had been incorporated by Congress, in substantially the same language, in the legislation concerning the District of Columbia, it was held that Congress must be presumed to have adopted those provisions as then understood in New York and already construed by the courts of that State, and not as affected by the previous practice in Maryland or in the courts of the District of Columbia.

Before the passage of the act of Congress of 1864, the Supreme Judicial Court of Maine had held that a mortgagee could not proceed against his mortgagor under a statute of that State, the leading sections of which provided that "a process of forcible entry and detainer may be commenced against a disseizor, who has not acquired any claim by possession and improvement; and against a tenant holding under a written lease or contract, or person holding under such tenant, at the expiration or forfeiture of the term, without notice;" "and against a tenant at will, whose tenancy has been terminated" by notice to quit, in which last case "the tenant shall be liable to the process aforesaid without further notice, and without proof of any relation of landlord and tenant." Maine Rev. Stat. of 1857, c. 94; *Reed* v. *Elwell*, (1858) 46 Maine, 270, 278, 279; *Dunning* v. *Finson*, (1859) 46 Maine, 546, 553. See also *Sawyer* v. *Hanson*, (1845) 24 Maine, 542; *Clement* v. *Bennett*, (1879) 70 Maine, 207.

Similar opinions have been expressed in cases arising in other States under statutes differing in language, but having the same general purpose. *Davis* v. *Hemenway*, (1855) 27 Vermont, 589; *McCombs* v. *Wallace*, (1872) 66 No. Car. 481; *Greer* v. *Wilbar*, (1875) 72 No. Car. 592; *Necklace* v. *West*, (1878) 33 Arkansas, 682; *Nightingale* v. *Barens*, (1879) 47 Wisconsin, 389; *Steele* v. *Bond*, (1881) 28 Minnesota, 267; *Chicago, Burlington & Quincy Railroad* v. *Skupa*, (1884) 16 Nebraska, 341. We have not been referred to, and are not aware of, a single case in any State in which a summary

process of this kind has been maintained by a mortgagee against his mortgagor, unless specifically given by distinct provision in the statute.

The view which has been generally, if not universally, entertained by the courts of the several States upon this subject has been well expressed by the Supreme Court of Minnesota in *Steele* v. *Bond,* above cited, as follows: "The act concerning forcible entries and unlawful detainers, so far as it affords a remedy for landlords against tenants who unlawfully detain the premises after a default in the payment of the rent, or the expiration of the term, must be construed as similar acts have always been construed, by the courts of other States, to apply only to the conventional relation of landlord and tenant. It was not intended as a substitute for the action of ejectment, nor to afford means of enforcing agreements to surrender possession of real estate, where either that relation does not exist or has not existed. The foundation fact upon which the jurisdiction rests is that the tenant is in possession of the land in consequence and by virtue of that relation, and unlawfully withholds possession after a default in the performance of the terms upon which he entered, or after his term has expired." 28 Minnesota, 273.

Considering the terms of the act of Congress, the settled construction, before the passage of that act, of the statute of Massachusetts from which it appears to have been taken, and the general course of decision in this country under statutes on the same subject, the reasonable conclusion is that, in order to sustain this form of proceeding, the conventional relation of landlord and tenant must exist or have existed between the parties.

A mortgagee holds no such relation to a mortgagor in possession. The mortgagor, though loosely called a tenant at will of the mortgagee, is such in no other sense than that his possession may be put an end to whenever the mortgagee pleases. Lord Mansfield, in *Moss* v. *Gallimore*, 1 Doug. 279, 283; Lord Selborne, in *Lows* v. *Telford*, 1 App. Cas. 414, 426; Shaw, C. J., in *Larned* v. *Clarke*, 8 Cush. 29, 31; *Carroll* v. *Ballance*, 26 Illinois, 9, 19. The mortgagee may take possession

at any time; but, so long as there has been no breach of condition of the mortgage, this right is rarely exercised, and the mortgagor is usually permitted, by oral or tacit agreement with the mortgagee, or by express stipulation in the mortgage, to remain in possession. 2 Bl. Com. 158; *Moss* v. *Gallimore*, above cited; *Colman* v. *Packard*, 16 Mass. 39; *Flagg* v. *Flagg*, 11 Pick. 475, 477; *Jamieson* v. *Bruce*, 6 Gill & Johns. 72, 75; *Van Ness* v. *Hyatt*, 13 Pet. 294, 299. Until the mortgagee takes actual possession, the mortgagor is not liable, without an express covenant to that effect, to pay rent, and is entitled to take the rents and profits to his own use. *Teal* v. *Walker*, 111 U. S. 242, 248–251, and cases cited; *Freedman's Saving Co.* v. *Shepherd*, 127 U. S. 494, 502; *Larned* v. *Clarke*, above cited.

When the mortgagor remains in possession with the assent of the mortgagee, without formal agreement, no one would think of saying that there was a lease from the mortgagee to the mortgagor, or that the relation of landlord and tenant existed between them. An express stipulation in the mortgage, that the mortgagor may remain in possession until breach of condition, is intended merely to put in definite and binding form the understanding of the parties as to the exercise of their rights as mortgagor and mortgagee, and not to create between them a distinct relation of tenant and landlord. *Anderson* v. *Strauss*, 98 Illinois, 485.

That such was the understanding and intention of the parties to the deed of trust in this case is apparent from its terms, by which the American Ice Company mortgages all its real estate, wharves, icehouses and other buildings and machinery; and it is provided that, until default, the mortgagor "shall be permitted and suffered to possess, manage, develop, operate and enjoy the plant and property herein conveyed, and intended so to be, and to take and use the income, rents, issues and profits thereof, in the same manner, to the same extent, and with the same effect, as if this deed had not been made."

The result is, that the plaintiff is not entitled to maintain this process, but must be left, so far as the aid of a court of

justice is requisite to secure the rights conferred by the mortgage, to the appropriate remedy of a writ of ejectment, or a bill of foreclosure.  Comp. Stat. D. C. c. 48, § 1; c. 55; § 10; *Hogan* v. *Kurtz*, 94 U. S. 773; *Hughes* v. *Edwards*, 9 Wheat. 489.

   *Judgment of the Court of Appeals reversed, and case re-manded with directions to affirm the judgment of the Supreme Court of the District of Columbia.*