Mr. Justice Morris
delivered the opinion of the Court:
This case was before us on a previous appeal, the report of which appears in 14 App. D. C. 304, and a report of another phase of the controversy between the parties appears at an earlier date in 6 App. D. C. 375, and 169 U. S. 295. In view of the full statements contained in those reports, it is unnecessary to repeat here the facts and circumstances of the controversy further than to say that the proceeding was commenced by the filing of a bill to foreclose a mortgage, or rather a deed of trust given by way of mortgage; and that the previous appeal was from a decree of the Supreme Court of the District ordering a sale of the mortgaged property, but denying other relief prayed by the complainant in the cause, the present appellee. This court reversed that decree, and remanded the cause for an *424 accounting to be had of the amount due and .payable of the mortgage debt, as preliminary to a decree of foreclosure; and also, inasmuch as the mortgaged property, being wharf property in the city of Washington fronting on the Potomac river, was within the limits of a district or territory to which the United States at that time, in a suit generally known as the Potomac Flats Case, was seeking to establish a paramount title, a suit then pending in the Supreme Court of the United States and undecided, this court gave the following direction:
“The sale of the property, however, under any decree that may be passed, should not be allowed 'to be made until after the case of Morris and others v. United States, known as the Potomac Flats Case, now pending in the Supreme Court of the United States, shall have been decided; for otherwise the sale of the property made subject to the final decision of that case could not be other than a mere speculation, and would most likely result in obtaining no more than a mere nominal sum.”
When the cause remanded went back to the Supreme Court of the District, it was referred to the auditor of that court to state the complainant’s account as trustee under the deed of trust, some funds having already been realized from the sale of property in the State of Maine, and to ascertain and report the amount of the indebtedness yet due and unpaid under the deed. This the auditor proceeded to do, and he found a balance of $1,755.64 yet remaining in the hands of the trustee and applicable to the payment of the indebtedness secured by the deed; and the amount yet due under the deed of the indebtedness thereby secured he found to be $28,038.50. No exception was taken by either side to the report; and the time allowed by the rules of the court for the filing of exceptions having elapsed, the solicitor for the complainant caused the case to be placed on the calendar of the court for the ensuing monthly term. This is claimed to have been done without notice to the solictor for *425 the defendants; and thereupon motion was made on their part to strike the cause from the calendar, for which several grounds were assigned, among others, that the Potomac Flats Case was still pending undecided in the Supreme Court of the District under the mandate of the Supreme Court of the United States remanding it for the ascertainment of some rights supposed to be in some of the parties thereto. It does not appear from the record whether any direct action was taken by the court on this motion; but the cause went on to argument, and was argued by counsel on both sides, and thereupon a final decree of foreclosure was entered.
This decree, after vacating the prior decree of foreclosure which we had reversed on the former appeal, adjudged: (1) That the auditor’s report should be ratified and confirmed ; (2) That the Eastern Trust and Banking Company was entitled to take immediate possession of the mortgaged property, and that such possession should be surrendered to it; (3) That there was due under the mortgage the sum of $28,038.50, with interest from March 13, 1897, and that the mortgaged property should be sold to pay this indebtedness. Trustees were appointed to make the sale, and the usual directions were prescribed for their conduct. It was further provided that, in the event of the insufficiency of the proceeds of sale to satisfy the mortgage debt, certain insurance money to the amount of $3,000, collected by William G. Johnson, as assignee, and which was mentioned and provided for on the former appeal, or so much thereof as might be necessary, if the whole were not necessary, should be paid by Johnson to the said trustees to be applied by them under the orders of the court.
Prom this decree the American Ice Company and William G. Johnson, assignee, the defendants in the suit, have prosecuted the present appeal.
There are five assignments of error: (1) That the court below erred in not striking the case from the calendar, and in proceeding to a decree; (2) That there was error in *426 decreeing that there was due upon the bonds secured by the deed of trust the sum of $28,038.50, with interest from March 13, 1897; (3) That it was error to decree a sale of the real estate for the payment of this indebtedness; (4) That it was error to decree that the insurance money to the amount of $3,000 was liable for any deficiency arising from the sale of the real estate; (5) That it was error not to have dismissed the bill.
1. With reference to the first of these assignments, it seems to be sufficient to say that, in so far as it refers to the practice of the court below, that practice is wholly immaterial on this appeal. If there was irregularity in the matter of calendaring the cause, which is by no means certain, it was waived or cured by the appearance of the appellants in the argument of the cause and their participation therein. They had their day in court, and they were not prejudiced by any failure of notice to appear. And so far as this assignment of error has reference to supposed imperfections in the audit or in the scope of the reference to the auditor, it would have been easy to cure them either by exceptions to the auditor’s report, or by testimony before the auditor, or by application to the court to enlarge the scope of the reference, no one of which was sought to be done. It is too late for the appellants to complain in this court of that which was their own failure in the court below. We find no merit in this first assignment of error.
2. In the second assignment of error it is complained that the court below was wrong in its adjudication that there was due to the complainant upon the bonded indebtedness secured by the deed of trust the sum of $28,038.50, with interest from March 13, 1897. The ground of this complaint is that it appears from the auditor’s report that there is in the hands of the trustee the sum of $1,755.64 applicable to the payment of the indebtedness; and that, if this were so applied, the indebtedness would be reduced to that extent, that is, to the sum of $26,282.86. Controversy *427 on this point is terminated by the agreement of counsel for the appellee in his brief and in open court to have the amount of the indebtedness so reduced. The decree, therefore, will be modified so as to adjudge the indebtedness due to be the sum of $26,282.86.
3. The third assignment of error is that the court should not have decreed the sale of the real estate mentioned in the proceedings in order to pay the alleged bonded indebtedness. And the argument here is that substantially the same conditions yet exist as existed at the time of our former decision with reference to the Potomac Flats Case, when we held that, under any decree that should be passed, no sale of the property should be allowed until after the decision of that case, then pending in the Supreme Court of the United States.
The Potomac Flats Case was decided by the Supreme Court of the United States on May 1, 1899; and it was there determined that the fee simple title to the property involved therein, which embraced the real estate sought to be con veyed by the deed of trust mentioned in this case, was in the United States. But it was recognized in the opinion of the court, as it had been by the act of Congress under which the suit had been instituted, that the occupants of the wharves and other property embraced in the suit might have rights which should not be taken without just compensation; and accordingly the cause was remanded to the Supreme Court of the District of Columbia in order that there should be an inquiry into such rights and interests and a valuation of them. At what time the mandate of the Supreme Court of the United States went down to the Supreme Court of the District of Columbia, we are not advised; but it could not have been very long delayed, for the Supreme Court of the United States adjourned within less than a month after the announcement of the decison. After being remanded, however, the Potomac Flats Case seems to have been consigned to the limbo of dead issues, and no attempt, at all events no *428 serious attempt, seems ever to have been made by anyone to resuscitate it from its condition of suspended animation. We understand that neither the Attorney General of the United States, nor anyone else acting for the United States, has sought to take possession of the wharf property involved in that suit, or has taken any steps to have a valuation of the rights of the occupants thereof; and no one acting on behalf of the occupants has taken any steps for that purpose. All the parties seem to be willing to permit the matter to rest indefinitely and until some emergency arises to demand energetic action, which may possibly be in the remote future.
The American Ice Company, one of the appellants in this case, was a party to the Potomac Flats Case, and participated in the conduct of that litigation until the final decision by the Supreme Court. The Eastern Trust and Banking Company, the appellee here, was not a party to that suit; and it is argued here on behalf of the appellants that it could not now be permitted to intervene in it in any manner. And the argument is further, that, until the rights of the American Ice Company shall have been determined in the Potomac Flats Case, or, in other words, until the American Ice Company thinks proper to move in the Potomac Flats Case for a valuation of its interest, which, of course, it may postpone forever, if it chooses, there can be no sale of that interest, and no decree should be rendered for such a sale. But the very statement of such a proposition as this is sufficient to discredit it. Were we to adopt it as the law of this case as now developed, it would simply be an invitation to the American Ice Company to take advantage of its own inactivity in order to perpetrate a wrong on the appellee. What the valuation of its interest in the premises would prove to be, if actively pressed to a determination, we can not, of course, anticipate; but it may be questioned, from the record of this litigation, whether it would be sufficient to satisfy the claims of the appellee and its other creditors. The American Ice Company, therefore, has probably no *429 motive of self-interest to move for the ascertainment of the value of its interest in the property in controversy; and it does not seem to be eager to admit tbe appellee to a share in the work of inquiry into that matter. It seems never to have called upon it for assistance, or requested it to contribute to the expense; and yet one of the grounds of complaint here on the part of the appellants is that the appellee has not contributed to the cost of that litigation.
The direction in our former opinion in this case, that there should be no sale until after the determination of the Potomac Flats Case, was manifestly intended for the benefit of all the parties to this cause, and most of all for the benefit of the appellants. But if the appellants by their continued inaction refuse to procure the desired determination of their interest, and at the same time refuse to put the appellee in such position as that it may act in its place in that case, it can not thereby be permitted to defeat the just rights of the appellee. And it can not complain if the appellee is thereby remitted to the speedy execution of the mortgage to which it is entitled. We have no doubt that, if the appellants persist in their course of inactivity in the Potomac Flats Case, there will be no difficulty in substituting a purchaser at a sale under a decree in this case in its place and stead, to ascertain the value of the interest in controversy. That interest can be ascertained before such sale by the action of the appellants or with their concurrence; after the sale it can be ascertained without such concurrence.
A condition of things somewhat similar to this was developed in the case of Bryan v. May, 9 App. D. C. 383, where we remanded a cause in order that a bill of complaint should be amended and a somewhat indefinite interest made definite. A sale of the interest to which the complainant was entitled was postponed until the extent of that interest could be ascertained. Instead of having this interest ascertained, the defendant adopted a policy of obstruction; *430 and a decree was thereupon rendered to expose his unascertained interest for sale, and we approved that decree. May v. Bryan, 16 App. D. C. 556. What was said in that case is not inapplicable to the case now before us.
We are of opinion, therefore, that the third assignment of error is without merit.
4. With reference to the fourth assignment, namely, that it was error to hold that the insurance money, amounting to $3,000, should be liable for any deficiency arising from the sale of the real estate, it is conceded by the appellants that the question -was fully disposed of on the former appeal (14 App. D. C. 337), adversely to their contention; and that the point is now made only for the purpose of having the question reserved in the event of an appeal to the Supreme Court of the United States. The assignment, therefore, needs no further consideration from us at this time.
5. The fifth and last assignment is that the bill of complaint should have been dismissed. It is not usual to consider a general assignment of this kind without some specification. It is true that there is in the brief for the appellants a suggestion in this connection that, in view of the sale or sales which had been made of property in Maine, the appellee should not now be permitted to have recourse to the property in this District. But, as the defendants have been given the benefit of all-the sales in Maine and credited with the highest amount realized, and as that amount falls far short of discharging the indebtedness, it is not apparent why the mortgagee should be debarred from recourse to the other property covered by the mortgage. But this point does not seem to be seriously insisted on here by the appellants, and the assignment of error is no more than a merely formal assignment.
From what we have said it follows in our opinion that the decree of the Supreme Court of the District of Columbia here appealed from is right and just, and that it should be affirmed, with costs, with the modification, however, that *431 the amount of the indebtedness secured by the mortgage is reduced to the sum of $26,282.86. Accordingly the cause will be remanded to that court, with directions to carry its said decree, so modified, into effect. And it is so ordered.