ASSOCIATED BROADCASTERS, Inc. v. FEDERAL COMMUNICATIONS COMMISSION.

COLUMBIA BROADCASTING SYSTEM OF CALIFORNIA, Inc. v. SAME.

Nos. 7282, 7283.

United States Court of Appeals for the District of Columbia.

Decided Nov. 29, 1939.

Petition for Rehearing Denied Jan. 2, 1940.

STEPHENS, Associate Justice, dissenting.

E. Stuart Sprague, of New York City, for appellant Associated Broadcasters, Inc.

D. M. Patrick, of Washington, D. C., for appellant Columbia Broadcasting System of California.

William J. Dempsey, Acting Gen. Counsel, Wm. H. Bauer, Acting Asst. Gen. Counsel, Andrew G. Haley, and William C. Koplovitz, all of the Federal Communications Commission, all of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and STEPHENS and MILLER, Associate Justices.

MILLER, Associate Justice.

The Associated Broadcasters, Inc., appellant in No. 7282, is licensed to operate a radio station known by the call letters KSFO in the City of San Francisco, California. Desiring to assign its radio station license to Columbia Broadcasting System of California, Inc., appellant in No. 7283, Associated joined with Columbia in filing an application with the Federal Communications Commission, seeking the consent of the latter—pursuant to Section 310 (b) of

the Communications Act[1]—for the voluntary assignment of its license. The application was heard and denied by the Commission. From its order, effective October 24, 1938, Associated and Columbia filed separate appeals. The Commission moved to dismiss each appeal on the ground that Section 402(b) gives this court no jurisdiction to entertain them.[2] The motions were argued together and will be considered together.

If Columbia had filed an application for a station license, requesting therein the same facilities as are now enjoyed by Station KSFO, denial of the application would, without question, have brought the applicant within the language of Section 402(b). The practical result of the Commission's contention, then, is that by arranging for an assignment, frankly revealing the arrangement to the Commission, and complying in every possible way with the statutory requirements governing assignments,[3] Columbia has deprived itself of a right of judicial review, which it would clearly have possessed if its application had been an outright request for the facilities of another station. This is not a sensible result and could not have been the intention of the statute.

In Pote v. Federal Radio Comm.,[4] a case involving circumstances similar in many respects to those involved in No. 7283, this court decided that a transferee who applied for an assignment of a radio station license had no right of appeal from an order of the Commission denying his application. In No. 7282 the applicant is the transferor and hence the Pote case is clearly distinguishable on that ground. And it is distinguishable, also, from No.

7283 in at least one important respect. In the Pote case the right of appeal was considered in the light of Section 12 of the Radio Act,[5] while here it must be considered in the light of Section 310(b) of the Communications Act, which contains significant language not contained in Section 12 of the Radio Act, as indicated by italics in the following quotation: "The station license required hereby, the frequencies authorized to be used by the licensee, and the rights therein granted shall not be transferred, assigned, or in any manner either voluntarily or involuntarily disposed of, or indirectly by transfer of control of any corporation holding such license, to any person, *unless the Commission shall, after securing full information, decide that said transfer is in the public interest,* and shall give its consent in writing."

Whatever may have been the proper interpretation of the old Section 12, and however justified may have been the decision in the Pote case, it is clear that the Communications Act, as now phrased, contemplates an application, a hearing, if necessary, and a decision upon the basis of public interest, just as much in the case of an application for the transfer of an outstanding station license as in the case of an application for a proposed new station license. Moreover, the one application comes just as clearly within the contemplation of Section 402(b) as the other. It follows that Columbia is an applicant for a radio station license whose application has been refused by the Commission and who, consequently, may appeal to this court under the provisions of Section 402 (b) (1). It follows, further, that Associated is a person who, under the provi-

---

[1] 48 Stat. 1086, 47 U.S.C.A. § 310 (b): "The station license required hereby, the frequencies authorized to be used by the licensee, and the rights therein granted shall not be transferred, assigned, or in any manner either voluntarily or involuntarily disposed of, or indirectly by transfer of control of any corporation holding such license, to any person, unless the Commission shall, after securing full information, decide that said transfer is in the public interest, and shall give its consent in writing."

[2] 48 Stat. 1093, 47 U.S.C.A. § 402 (b): "An appeal may be taken, in the manner hereinafter provided, from decisions of the Commission to the United States Court of Appeals for the District of Columbia in any of the following cases:

"(1) By any applicant for a construction permit for a radio station, or for a radio station license, or for renewal of an existing radio station license, or for modification of an existing radio station license, whose application is refused by the Commission.

"(2) By any other person aggrieved or whose interests are adversely affected by any decision of the Commission granting or refusing any such application."

[3] Section 310 (b), supra note 1.

[4] 62 App.D.C. 303, 67 F.2d 509, certiorari denied, 290 U.S. 680, 54 S.Ct. 103, 78 L.Ed. 586.

[5] Sections 12 and 16, Act of February 23, 1927, 44 Stat. 1162, 1167, 1169, as amended, 46 Stat. 844.

sions of Section 402(b) (2), may invoke the jurisdiction of this court to determine whether it has been aggrieved, or its interests adversely affected, by the decision of the Commission, refusing the application of Columbia. Whether it may come also within the terms of Section 402(b) (1) is unnecessary for us to determine. This court has jurisdiction to hear both appeals. The motions to dismiss, therefore, must be denied.

■■■■■ It is contended that as the Communications Act,[6] which was adopted after the decision in the Pote case, failed to make express provision for appeal from a refusal of an application for transfer of a station license, the rule of statutory construction is applicable, that where a statute is reenacted—after either an administrative or a judicial construction thereof—that fact constitutes evidence of Congressional intent to incorporate such construction into the reenactment. This, however, is not a conclusive presumption. As the Supreme Court has said, one decision construing an act does not approach the dignity of a well-settled interpretation.[7] And it has also said: " 'A custom of the Department, however long continued by successive officers, must yield to the positive language of the statute.' "[8] In our view—especially because of the language added to the statute as enacted in 1934—the presumption should not be indulged in this case.

To the extent that the decision in the Pote case may be in conflict with these conclusions, it is overruled.

Motions to dismiss denied.

STEPHENS, Associate Justice.

I dissent. The existence of a right of appeal is dependent upon Congressional intent. In Pote v. Federal Radio Commission, 1933, 62 App.D.C. 303, 67 F.2d 509, this court held that Section 16 of the Act of July 1, 1930, 46 Stat. 844, did not authorize an appeal from the refusal of an application for transfer of a station license. In the Communications Act of 1934, 48 Stat. 1064, 1093, Congress substantially re-enacted the provisions for appeals contained in the 1930 statute, except that it added language permitting an appeal from the refusal of an application for a construction permit. I think the law is well settled that re-enactment of a statute which has received a judicial construction will be presumed to be an adoption by the legislature of such construction. Latimer v. United States, 1912, 223 U.S. 501, 32 S.Ct. 242, 56 L.Ed. 526; Carroll Electric Co. v. Snelling, 1 Cir., 1932, 62 F.2d 413. Cf. Hecht v. Malley, 1924, 265 U.S. 144, 44 S.Ct. 462, 68 L.Ed. 949; Miller v. Maryland Casualty Co., 2 Cir., 1930, 40 F.2d 463; Kales v. Commissioner of Internal Revenue, 6 Cir., 1939, 101 F.2d 35, 122 A.L.R. 211. See 2 Sutherland, Statutory Construction (2d ed. 1904) § 403; 1 Paul & Mertens, Law of Federal Income Taxation (1934) § 3.20.

The statement in United States v. Raynor, 1938, 302 U.S. 540, 58 S.Ct. 353, 82 L.Ed. 413, referred to in the majority opinion, that "One decision construing an act does not approach the dignity of a well settled interpretation," was made in respect of a single decision by a Federal court of appeals construing a statute which might come for interpretation before other courts of appeals. But where a single construction of a statute is necessarily conclusive, the proposition quoted would not apply. In Seeberger v. Castro, 1894, 153 U.S. 32, 14 S.Ct. 766, 38 L.Ed. 624, certain language in the Tariff Act of 1883 had been construed by the Supreme Court. The same language, embodied in the Tariff Act of 1897, was the subject of interpretation in Latimer v. United States, supra. Concerning the effect of re-enactment after the prior construction, the Court in the Latimer case said, speaking through Mr. Justice Lamar:

"The words, having received such a con-

---

[6] Act of June 19, 1934, 48 Stat. 1064, 47 U.S.C.A. § 151 et seq.

[7] United States v. Raynor, 302 U.S. 540, 551, 552, 58 S.Ct. 353, 358, 82 L.Ed. 413: "The fact that Congress revised and codified the criminal laws after the Circuit Court of Appeals in the case of Krakowski v. United States, 161 F. 88, held that the act only prohibited possession of the distinctive paper does not detract from the soundness of this conclu-

sion. One decision construing an act does not approach the dignity of a well settled interpretation."

[8] See Lukens Steel Co. v. Perkins, 70 App.D.C. 354, 107 F.2d 627, 634, and cases there cited. Compare the majority opinion of Mr. Justice Frankfurter with the dissenting opinion of Mr. Justice Roberts in Neirbo Co. v. Bethlehem Shipbuilding Corp., Ltd., 60 S.Ct. 153, 84 L. Ed. ——.

struction under the act of 1883, must be given the same meaning when used in the Tariff Act of 1897, on the theory that, in using the phrase in the later statute, Congress adopted the construction already given it by this court. . . . " [223 U.S. at page 504, 32 S.Ct. page 242, 56 L.Ed. 526]

The United States Court of Appeals for the District of Columbia is the only court, except the Supreme Court, having appellate jurisdiction over the radio orders of the Communications Commission. Pote v. Federal Radio Commission was therefore a conclusive construction of the .1930 act, petition for writ of certiorari having been denied by the Supreme Court (1933, 290 U.S. 680, 54 S.Ct. 103, 78 L.Ed. 586).

I am aware that the presumption that re-enactment of a statute after judicial construction will be deemed a legislative adoption of that construction is not conclusive. The presumption might be said not to arise if the judicial construction appears clearly to be wrong; but I think Pote v. Federal Radio Commission cannot be said to be clearly wrong. And re-enactment of particular language after judicial construction thereof would not of course be persuasive that Congress had adopted the judicial construction if amendment of other portions of the statute · has altered the meaning of the construed language. But I think that the requirement of Section 310(b) of the Act of 1934, 48 Stat. 1064, 1086, that there should be no transfer of a station license unless the Commission shall "after securing full information, decide that said transfer is in the public interest, and shall give its consent in writ-

ing"—Section 12 of the Radio Act of 1927, 44 Stat. 1162, 1167, having required merely the "consent in writing of the licensing authority"—is an amendment definitive of the duty of the Commission when passing upon applications for transfers and not one relevant to the right of appeal from a refusal to permit a transfer. And I disagree therefore with the point made by the majority that the change makes the Pote case no longer applicable.

I think the point made in the majority opinion that the Pote case is not controlling as to a transferor is not supportable. While it is true that that case involved a transferee only, the theory of the case was, as I read it, that the statute did not contemplate review of the Commission's refusal to allow a transfer, and this without respect to the question whether the application for transfer was made by the transferee alone or by both the transferor and the transferee. It is of no avail to treat a transferor as, within Section 402 (b) (2), "any other person aggrieved or whose interests are adversely affected by any decision of the Commission granting or refusing any such application" because, under the view that I take, the phrase "any such application," in its reference to applications, the refusal of which, under Section 402(b) (1), is appealable, does not include an application for transfer. To treat an application for transfer as an application by the transferor "for modification of an existing radio station license" would strain the quoted words out of their normal meaning. A transferor seeking to divest himself of a license can hardly be said to be one seeking to modify it.