BRIGGS AND CO. v. DISTRICT OF COLUMBIA.

No. 10988.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 20, 1951.

Decided May 1, 1952.

1. 1940, 73 App.D.C. 67, 116 F.2d 552.

2. 1942, 75 U.S.App.D.C. 293, 127 F.2d 160.

Mr. Francis C. Brooke, Washington, D. C., with whom Messrs. Paul B. Cromelin and Lloyd Fletcher, Jr., Washington, D. C., were on the brief, for petitioner.

Mr. Harry L. Walker, Asst. Corporation Counsel for the District of Columbia, with whom Messrs. Vernon E. West, Corporation Counsel, and Chester H. Gray, Principal Asst. Corporation Counsel, were on the brief, for respondent. Mr. Robert C. Chalfonte, Asst. Corporation Counsel, also entered an appearance for respondent.

Before EDGERTON, CLARK and FAHY, Circuit Judges.

FAHY, Circuit Judge.

Petitioner appeals from a decision of the Board of Tax Appeals for the District which affirmed certain use tax [1] assessments based on the value of cellulose casings used by petitioner in manufacturing frankfurters for sale.

The cellulose casings are composed of carbon, hydrogen and oxygen.[2] Approximately 95% of petitioner's frankfurters are processed with the use of these artificial casings. The sausage mixture is forced by machinery into the casings, which are "linked" or divided into the proper lengths, at first without separation of the links. The process then calls for heating and smoking, which causes the soluble proteins near the outer surface of the mixture to coagulate and form a crust adjacent to the inner surface of the casings. After cooling, the casings are removed. The frankfurters now hold their shape unaided by the casings and are ready for market. The actual separation of the links comes just prior to packaging and shipment. The casings, in being removed, are cut and rendered unavailable for further use. Natural casings, ordinarily eaten as a part of the frankfurter, are not removed because to do so would damage the surface of the contents.

Each type of casing serves two purposes. It supports the meat mixture and thus gives the frankfurter its shape, and it allows penetration of the mixture by the heat and smoke. The selling price of each variety of finished product is about the same.

1. Section 212 of Title II, known as the "District of Columbia Use Tax Act" of the District of Columbia Revenue Act of 1949, 63 Stat. 124, et seq., Act May 27, 1949.

2. Natural casings, made of animal intestines, most commonly sheep, are used to some extent. References in this opinion are to the cellulose casings which are the subject of the disputed tax, unless otherwise indicated.

Section 212 of Title II, note 1, supra, imposes a 2% tax on the "use, storage, or consumption of any tangible personal property and services sold or purchased at retail sale." Section 201(a) defines retail sale as including "all sales of tangible personal property to any person for any purpose other than those in which the purpose of the purchaser is * * * to use or incorporate the property so transferred as a material or part of other tangible personal property to be produced for sale by manufacturing, assembling, processing, or refining. * * *" Under the statutory language, though the casings are purchased by petitioner outside the District, such purchases constitute retail sales to petitioner and the use of the casings by petitioner in the District is taxable unless they are purchased to be used or incorporated as a material or part of the frankfurters manufactured for sale.

Though used in the manufacturing process the casings plainly are not incorporated in the frankfurters. The tax applies, therefore, unless they are used as a material or part of the frankfurters. This is so even though we assume that "use" must be given a meaning other than "incorporate."[3] In contrast with the natural casings it seems to us from the description we have given of the manufacturing process that the cellulose casings are not used as a material or part of the frankfurters. In the language of the Board, notwithstanding their usefulness the casings "were merely an instrumentality or utensil in the manufacture * * *. They cannot be said to be or ever to have been a part of the sausage."

Much could be said in favor of exempting from the coverage of the statute property used in the sense of being consumed in the manufacturing process where, as here, the value of the casing so used is represented in some part at least in the finished product. Since the casing (1) shapes the frankfurter and (2) allows penetration of the mixture by heat and smoke, some economic value of the finished product is attributable to the casing. See Western Cartridge Co. v. Smith, 2 Cir.1941, 121 F. 2d 593. But the statutory language does not, as in the cited case, exempt an article used "as material in the manufacture of" another article, but only one used as a "material or part of" the other or incorporated in it.

It is argued that a different result would be reached in Maryland. There a provision similarly worded had been enacted before passage of the District of Columbia statute. By rule and administrative interpretation Maryland had apparently excluded from the coverage of its statute property consumed in the manufacturing process. It is contended that since this occurred prior to enactment of the local statute Congress intended the latter to be similarly construed. But at least in the absence of a more settled interpretation, or one of high state judicial authority, we are free to apply the District statute differently.[4] As we construe the situation the

---

3. Current local regulations, promulgated pursuant to the statute, seem to say that "use" and "incorporate" are synonymous as used in the statute. Section 706(2) of the Regulations pertaining to Sales and Use Taxes, as amended August 11, 1949. Originally the regulations interpreted the statute as excluding property purchased "for use or consumption" in the production of tangible personal property to be produced for sale by manufacturing (Section 706(b) as promulgated July 12, 1949)—an interpretation which supports petitioner's position, since the cellulose casings are consumed in the manufacturing process.

4. The Board said on this point: "It is, of course, a rule of statutory construction that when Congress adopts a statute of a State, the known and settled construction of the statute by the courts of such State are considered as having been adopted with the statute. Perkins v. Berger, 79 U.S.App.D.C. 286, 287, 145 F.2d 856; McDonald v. Hovey, 110 U.S. 619, 628 [4 S.Ct. 142, 28 L.Ed. 269]; Willis v. Eastern Trust & Banking Co., 169 U.S. 295, 307 [18 S.Ct. 347, 42 L.Ed. 752]; Senator Cab Co. v. Rothberg [D.C.Mun.] 42 A.2d 245, 247. In order for the rule to be applicable, such construction must have been by the highest judicial authority of the State, Smith v. Baker, 5 Okl. 326, 49 P. 61; Given v. Owen, 73 Okl. 146, 175 P. 355 [sic] [345]. One decision construing an act does not approach the dignity of a well-settled interpretation, United States v.

cellulose casings are not incorporated in the frankfurters or used as a material or part of them, though used or consumed in the manufacturing process. This conclusion is not free of doubt, but our view is that if the uncertainty is to be resolved as petitioner ably contends this should be done by clarifying legislation rather than by judicial interpretation.

Affirmed.

Rayner [sic] [Raynor], 302 U.S. 540, 551 [58 S.Ct. 353, 82 L.Ed. 413]; Associated Broadcasters v. Federal Communications Commission, 71 App.D.C. 206, 208, 108 F.2d 737. Constructions by non-judicial authorities, do not come within the rule, Public Service Ry. Co. v. Board of Public Utility Commissioners, 81 N.J.L. 363, 81 [sic] [80] A. 27, nor does the administrative construction, made a short time before the enactment of the statute here under construction, approach the dignity of a well-settled interpretation. * * *"